STATE of Tennessee, Appellee,

v.

Chris FREEMAN, Appellant.

Court of Criminal Appeals of Tennessee,
at Jackson.

Sept. 30, 1996.

Permission to Appeal Denied by
Supreme Court March 17, 1997.

Vanedda Prince, Union City, William L. Johnson, Memphis, for appellant.

Charles W. Burson, Attorney General & Reporter, Ellen H. Pollack, Asst. Attorney General, Nashville, Amy Everhart, Legal Assistant, Office of the Attorney General, Thomas A. Thomas, District Attorney General, Union City, for appellee.

## OPINION

PEAY, Judge.

The defendant was charged in the indictment with reckless endangerment, unlawful possession of a weapon, and two counts of attempted first-degree murder. On August 23, 1995, he was convicted at a jury trial of reckless endangerment, unlawful possession of a weapon, and two counts of attempted second-degree murder.[1] The trial court sentenced the defendant to two consecutive fifteen year terms for the two counts of attempted second-degree murder, a concurrent three year term for reckless endangerment, and a concurrent three year term for unlawful possession of a weapon. In this appeal as of right, the defendant challenges the sufficiency of the convicting evidence, the length of his sentences, and the trial court's imposition of consecutive sentences for his attempted second-degree murder convictions. We find that the defendant's issues on appeal lack merit, and his convictions and sentences are therefore affirmed.

The State's proof at trial revealed that the victim, Terrell Davis, had witnessed an altercation between relatives of the defendant and some of Davis' friends on March 19, 1995. On March 20, 1995, Davis and Marcus Treadwell drove around Union City and visited a local club. They each consumed a twenty-two ounce beer at the club approximately one hour before leaving. Upon leaving the club, they began to drive around town again. Davis spotted the defendant driving in front of them and flashed his lights to signal the defendant that he wanted to pull over and talk. Davis testified that he had wanted to assure the defendant, whom he had known nearly his entire life, that he had not been involved in the altercation on the previous night. According to Davis, it had somehow been reported to the defendant that Davis was involved in the altercation, and Davis had been told "to watch his back." Hence, Davis wanted to speak with the defendant to clarify the situation.

At approximately 11:00 p.m., the defendant pulled over on the side of the street in front of his uncle's house. As Davis and Treadwell were driving toward the defendant's car, Treadwell saw someone get out of the van parked in the driveway of the defendant's uncle's house and enter the home. Treadwell identified the van as one he had seen the defendant's uncle, R.J. Freeman, drive. Because of the distance, however, Treadwell could not determine the identity of the individual who exited the van and entered the house.

Davis and Treadwell stopped alongside the defendant's parked car. The defendant got out of his car and leaned over the roof to talk with Davis. Davis had a calm conversation with the defendant for a few minutes. Treadwell then interjected that the defendant was "nothing without no gun." Davis heard R.J. Freeman call out to the defendant from inside the house, and the defendant walked to the house. Treadwell urged Davis

---

1. At the conclusion of the State's proof, the trial judge granted the defendant's motion for verdict of acquittal and reduced the charges in counts one and two from attempted first-degree murder to attempted second-degree murder.

to leave the scene, telling Davis that the defendant was "going to get that thing," meaning a gun. Davis witnessed R.J. Freeman open the front screen door and pass out a rifle to the defendant. The defendant turned, squatted, and aimed the rifle at Davis' car. Davis and Treadwell ducked down and began to drive away from the scene. As they drove away, they heard multiple gunshots come from behind them, hitting Davis' car and wounding Davis in the shoulder and buttocks.

Priscilla Henry was sitting in an automobile parked in the driveway of a house down the street from R.J. Freeman's home at approximately 11:00 p.m. on March 20, 1995. She was listening to the stereo when she heard gunshots ring out for several seconds and saw sparks coming up from the street in the direction of R.J. Freeman's home. She then saw Davis' car drive by her house, coming from the direction of R.J. Freeman's home.

The State also introduced evidence that multiple vehicles and homes across the street from R.J. Freeman's house had been struck by bullets. The two homes which were hit by gunfire were occupied by both adults and children at the time of the shooting. Davis' vehicle had fifteen to eighteen bullet holes in it, and its tires were flat from having been shot. The only bodily injuries stemming from the shooting were Davis' wounds to the shoulder and buttocks. When law enforcement officers questioned Davis immediately after the shooting, he identified the defendant as the individual who had shot him.

Police officers arrived at the scene of the shooting shortly after the incident. They found thirty-nine shell casings of the 7.62 × 39 type. This type of ammunition is the kind commonly used in military and similar firearms, such as the AK–47 and the Chinese SKF. Pursuant to a warrant, police officers searched the home of R.J. Freeman later that night. They found an AK–47's forty shell capacity ammunition clip for 7.62 × 39 bullets.

The defendant testified in his own behalf at trial. He stated that he had decided on the spur of the moment to travel to Humboldt to visit a friend on March 20, 1995. He left Union City at approximately 10:00 p.m. and pulled over at 10:27 p.m. with car trouble. An individual who introduced himself as Floyd stopped to help the defendant. Floyd decided that the defendant was probably out of gas and went to a station to get fuel for the defendant. He returned with the gas, and the defendant's car started without difficulty. The defendant thanked Floyd, paid him for the gas, and they both drove away.

Floyd Sowell testified that he was the individual who had stopped to help the defendant. He confirmed the defendant's story regarding the events of the night of March 20, 1995. On cross-examination, Sowell admitted that he had several criminal convictions for bad checks. Leon White and Joe Clark testified as character witnesses for the defendant. They stated that the defendant's reputation in the community was that of a truthful and honest young man.

In his first issue, the defendant challenges the sufficiency of the convicting evidence for each of his convictions. The defendant contends that his alibi defense, corroborated by Floyd Sowell, renders the eyewitness testimony of Davis and Treadwell, who both have felony drug convictions and had been drinking on the night of the shooting, legally insufficient to support the verdicts of guilt. As a sub-issue, the defendant also contends that the evidence was insufficient to support that he acted knowingly with regard to his convictions for attempted second-degree murder. He argues that, even if the offenses occurred as Davis and Treadwell testified, the proof does not demonstrate that the defendant's actions were reasonably certain to result in the death of Davis, Treadwell, or any other individual.

■ When an accused challenges the sufficiency of the convicting evidence, we must review the evidence in the light most favorable to the prosecution in determining whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). We do not reweigh or re-evaluate the evidence and are required to afford the State the strongest legitimate

view of the proof contained in the record as well as all reasonable and legitimate inferences which may be drawn therefrom. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn.1978).

 Questions concerning the credibility of witnesses, the weight and value to be given to the evidence, as well as factual issues raised by the evidence are resolved by the trier of fact, not this Court. *Cabbage*, 571 S.W.2d 832, 835. A guilty verdict rendered by the jury and approved by the trial judge accredits the testimony of the witnesses for the State, and a presumption of guilt replaces the presumption of innocence. *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973).

 A defendant challenging the sufficiency of the proof has the burden of illustrating to this Court why the evidence is insufficient to support the verdict returned by the trier of fact in his or her case. This Court will not disturb a verdict of guilt for lack of sufficient evidence unless the facts contained in the record and any inferences which may be drawn from the facts are insufficient, as a matter of law, for a rational trier of fact to find the defendant guilty beyond a reasonable doubt. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn.1982).

 In the present case, the jury heard the evidence regarding the defendant's alibi, evaluated the credibility of all of the witnesses, and rejected the defense. As is evident from their verdicts of guilt, the jury chose to accredit the eyewitness testimony of the State's witnesses. The defendant seems to ask this Court to believe his testimony and to disregard that of the State's witnesses. The jury, however, has already resolved this credibility matter against the defendant. From a review of the entire record, we can only conclude that the facts are sufficient, as a matter of law, for a rational trier of fact to find the defendant guilty beyond a reasonable doubt.

Similarly, we must also conclude that the evidence is sufficient to establish that the defendant acted knowingly with regard to his convictions for attempted second-degree murder, as is required under T.C.A. § 39–12–101(a) and T.C.A. § 39–13–210(a)(1). A person acts knowingly "when the person is aware that the conduct is reasonably certain to cause the result." T.C.A. § 39–11–106(a)(20). Construing the evidence in the light most favorable to the State, the record in the case at bar reveals that the defendant had an argument with Marcus Treadwell, a passenger in Terrell Davis' car. After being handed a gun by his uncle, R.J. Freeman, the defendant squatted down, aimed the rifle, and fired approximately thirty-nine bullets in rapid succession at Davis' vehicle, which he knew was occupied. Fifteen to eighteen bullets did in fact strike the vehicle, wounding one of the two occupants. We find that these circumstances fully support the jury's conclusion that the defendant was aware that his conduct was reasonably certain to cause the death of the individuals in the vehicle. The defendant's challenge to the sufficiency of the convicting evidence is therefore without merit.

In his second issue, the defendant complains that the sentences imposed by the trial court were excessive. After a sentencing hearing, the trial court specifically found that there were no mitigating factors applicable to the present case. The defendant does not challenge that finding. The trial court found six enhancing factors applicable to some or all of the defendant's convictions as follows:

(a) T.C.A. § 40–35–114(1) (defendant has previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range) applicable to all four convictions;

(b) T.C.A. § 40–35–114(2) (defendant was a leader in commission of offense involving two or more criminal actors) applicable to all four convictions;

(c) T.C.A. § 40–35–114(3) (offense involved more than one victim) applicable to all four convictions;

(d) T.C.A. § 40–35–114(9) (defendant possessed or employed firearm, explosive device, or other deadly weapon during commission of offense) applicable to attempted second-degree murder convictions only;

(e) T.C.A. § 40–35–114(12) (during commission of the felony, defendant willfully inflicted bodily injury upon another person,

or the actions of the defendant resulted in the death or serious bodily injury to a victim or a person other than the intended victim) applicable to attempted second-degree murder of Terrell Davis only; and (f) T.C.A. § 40–35–114(13)(B) (felony was committed while the defendant was on parole from a prior felony conviction) applicable to all four convictions.

The defendant does not challenge the trial court's application of T.C.A. §§ 40–35–114(1), (9), or (13). Instead, the defendant contends that the trial court erred in applying T.C.A. § 40–35–114(2), T.C.A. § 40–35–114(3) with respect to his attempted second-degree murder convictions, and T.C.A. § 40–35–114(12).

■ When a defendant complains of his or her sentence, we must conduct a *de novo* review with a presumption of correctness. T.C.A. § 40–35–401(d). The burden of showing that the sentence is improper is upon the appealing party. T.C.A. § 40–35–401(d) Sentencing Commission Comments. This presumption, however, "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn.1991).

A portion of the Sentencing Reform Act of 1989, codified at T.C.A. § 40–35–210, established a number of specific procedures to be followed in sentencing. This section mandates the court's consideration of the following:

(1) The evidence, if any, received at the trial and the sentencing hearing; (2) [t]he presentence report; (3) [t]he principles of sentencing and arguments as to sentencing alternatives; (4) [t]he nature and characteristics of the criminal conduct involved; (5) [e]vidence and information offered by the parties on the enhancement and mitigating factors in §§ 40–35–113 and 40–35–114; and (6) [a]ny statement the defendant wishes to make in his own behalf about sentencing.

T.C.A. § 40–35–210.

■ In addition, this section provides that the minimum sentence within the range is the presumptive sentence. If there are enhancing and mitigating factors, the court must start at the minimum sentence in the range and enhance the sentence as appropriate for the enhancement factors and then reduce the sentence within the range as appropriate for the mitigating factors. If there are no mitigating factors, the court may set the sentence above the minimum in that range but still within the range. The weight to be given each factor is left to the discretion of the trial judge. *State v. Shelton*, 854 S.W.2d 116, 123 (Tenn.Crim.App.1992).

■ The Act further provides that "[w]henever the court imposes a sentence, it *shall place on the record* either orally or in writing, what enhancement or mitigating factors it found, if any, as well as findings of fact as required by § 40–35–209." T.C.A. § 40–35–210(f) (emphasis added). Because of the importance of enhancing and mitigating factors under the sentencing guidelines, even the absence of these factors must be recorded if none are found. T.C.A. § 40–35–210 comment. These findings by the trial judge must be recorded in order to allow an adequate review on appeal.

■ The defendant first challenges the trial court's application of T.C.A. § 40–35–114(2), that he was a leader in the commission of an offense involving two or more criminal actors. He argues that the facts of the present case suggest that neither he nor R.J. Freeman was a leader in the commission of the offense, comparing his case to *State v. Buckmeir*, 902 S.W.2d 418 (Tenn.Crim.App. 1995). The record reveals that while the defendant was arguing with Marcus Treadwell, R.J. Freeman called out to the defendant. The defendant walked to the front door of R.J. Freeman's home, at which time R.J. Freeman handed the defendant a rifle. The defendant then turned and began shooting. There is no evidence in the record that the defendant somehow planned this encounter. Moreover, there is no proof in the record that the defendant requested the rifle or prompted R.J. Freeman to give it to him. We recognize that T.C.A. § 40–35–114(2) does not require that the defendant be the sole leader but rather that he be "a leader," and as a result both of two criminal actors may qualify for enhancement under this fac-

tor. *See State v. Hicks,* 868 S.W.2d 729, 731 (Tenn.Crim.App.1993). Under the facts of the present case, however, we agree with the defendant that the evidence in this record does not suggest that he was a leader in the commission of the offenses according to T.C.A. § 40-35-114(2). We find, therefore, that the trial court erred in applying that enhancement factor to the defendant's sentences.

▓▓▓▓▓ The defendant next challenges the trial court's application of T.C.A. § 40-35-114(3), that the offenses involved more than one victim, to his attempted second-degree murder sentences. Citing *State v. McKnight,* 900 S.W.2d 36 (Tenn.Crim.App. 1994), the defendant argues that because he was convicted of attempted second-degree murder for both Terrell Davis and Marcus Treadwell, the "more than one victim" enhancement factor is not applicable. Recognizing that T.C.A. § 40-35-114(3) does not apply when there are separate convictions for each victim, the State concedes that this enhancement factor should not have been applied to the defendant's sentences for attempted second-degree murder. *Cf. State v. Lambert,* 741 S.W.2d 127 (Tenn.Crim.App. 1987). Accordingly, we find that the trial court erred in applying T.C.A. § 40-35-114(3) to the defendant's attempted second-degree murder sentences.

The defendant also challenges the trial court's application of T.C.A. § 40-35-114(12) to his sentence for the attempted second-degree murder of Terrell Davis. This section reads as follows: "During the commission of the felony, the defendant willfully inflicted bodily injury upon another person, or the actions of the defendant resulted in the death of or serious bodily injury to a victim or a person other than the intended victim." The trial court found that the first clause of the enhancing factor, that the defendant willfully inflicted bodily injury upon another person, applied to the defendant's sentence for the attempted second-degree murder of Terrell Davis because Davis was wounded in the shoulder and the buttocks during the defendant's attack. The defendant, however, argues that the trial court erred in applying this enhancement factor because bodily injury is inherent in the crime of attempted second-degree murder, and cites *State v. Makoka,* 885 S.W.2d 366 (Tenn. Crim.App.1994), in support of his argument.

In *Makoka,* the defendant was convicted of one count of attempted first-degree murder and one count of attempted second-degree murder. *Makoka,* 885 S.W.2d at 368. The record revealed that the defendant was involved in an extra-marital amorous relationship with a woman by the name of Jane Rhodes. When Rhodes ended the relationship, the defendant became angry. He followed Rhodes home from her place of employment the next day. Rhodes was being driven home by her new boyfriend, Dwight Cooper. The defendant attempted to force their vehicle off the road and eventually shot and wounded Cooper. Cooper parked the vehicle at a local police station and fled as the defendant fired two more shots from his .357 revolver. Rhodes attempted to flee, but the defendant shot and wounded her in the buttocks. When Rhodes collapsed, the defendant shot her in the chest as she lay on the ground. *Makoka,* 885 S.W.2d at 368–369.

▓▓▓▓ A panel of this Court found that the trial court had erred in enhancing the defendant's sentences based on T.C.A. § 40-35-114(12). The *Makoka* court explained its reasoning as follows:

This Court has consistently ruled that this factor should not be considered based upon the injuries sustained by the victim. In these cases, the accused was convicted of either aggravated assault or murder. This same reasoning can be extended to an attempt to commit murder in the first degree and murder in the second degree. A victim of either offense is susceptible to the infliction of serious bodily injury. The only factor that distinguishes the crime of attempting to commit murder in the first degree and murder in the second degree is the victim dying as a result of the injuries inflicted by the accused.

*Makoka,* 885 S.W.2d at 374 (citations omitted). Under *Makoka,* then, it appears that the trial court in the case at bar erred in applying T.C.A. § 40-35-114(12) to enhance

the defendant's sentence for the attempted second-degree murder of Terrell Davis.

As the State points out, however, a recent Tennessee Supreme Court case casts some doubt on the validity of *Makoka*. In *State v. Trusty*, our Supreme Court considered whether a conviction for an uncharged offense (aggravated assault) that is neither a lesser grade or class nor necessarily included in the charged offense (attempted first-degree murder) may stand in circumstances in which sufficient evidence supports the conviction. *See State v. Trusty*, 919 S.W.2d 305, 308 (Tenn.1996). In its discussion of that issue, the Court stated that "an attempted murder does not necessarily require either contact with the victim or bodily injury." *Trusty*, 919 S.W.2d at 313 n. 7.

*Makoka* held that T.C.A. § 40–35–114(12) was not properly applicable to a sentence for attempted murder because the potential for bodily injury was inherent in the offense. *See Makoka*, 885 S.W.2d at 374. The language of *Trusty*, however, recognizes that attempted murder does not require bodily injury. *See Trusty*, 919 S.W.2d at 313 n. 7. In light of *Trusty*, we find the holding of *Makoka* with respect to the applicability of T.C.A. § 40–35–114(12) to a sentence for attempted murder to be of questionable validity.

Moreover, we must also point out that the cases cited by *Makoka* in support of the proposition that T.C.A. § 40–35–114(12) is not applicable for offenses in which bodily injury is inherent all involve either murder or aggravated assault (by bodily injury). *See State v. Greg Patterson*, C.C.A. No. 03C01–9106–CR–00180, Loudon County (Tenn.Crim. App. filed May 19, 1992, at Knoxville); *State v. Tony Von Carruthers*, C.C.A. No. 02C01–9102–CR–00019, Shelby County, 1991 WL 147946 (Tenn.Crim.App. filed August 7, 1991, at Jackson). We find no Tennessee case other than *Makoka* which has extended this reasoning with respect to murder and aggravated assault (by bodily injury) to the offense of attempted murder.

The trial court found T.C.A. § 40–35–114(12) applicable only to the defendant's sentence for the attempted second-degree murder of Terrell Davis, the victim who was physically wounded during the defendant's attack. T.C.A. § 40–35–114 provides for the application of appropriate enhancement factors "if not themselves essential elements of the offense as charged in the indictment." Accordingly, we find that because bodily injury is not an essential element of the offense of attempted second-degree murder, the trial court properly enhanced the defendant's sentence for that offense with regard to the victim who was actually wounded. In so finding, we note our disagreement with the *Makoka* court's reasoning to the contrary given the language of our Supreme Court in *Trusty*.

■ In sum, we concluded that the trial court erred in applying T.C.A. § 40–35–114(2) to all four of the defendant's sentences, that the trial court erred in applying T.C.A. § 40–35–114(3) to the defendant's two sentences for attempted second-degree murder, and that the trial court properly applied T.C.A. § 40–35–114(12) to the defendant's sentence for the attempted second-degree murder of Terrell Davis. The defendant was sentenced to fifteen years on each count of attempted second-degree murder (possible range of twelve to twenty years) and to three years each for reckless endangerment and unlawful possession of a weapon (possible range of two to four years). The trial court correctly considered the relevant sentencing principles as well as the egregious nature of an exceptional danger accompanying the defendant's shooting spree in a residential neighborhood. Even if we were to conclude that all three of the enhancing factors challenged by the defendant were improperly applied, the three enhancing factors which the defendant did not challenge on appeal and the trial court's unchallenged ruling that no mitigating factors applied to the present case fully support the trial court's imposition of mid-range sentences for each of the defendant's convictions. The defendant has failed to carry his burden of demonstrating that his sentences were improper, and his second issue is therefore without merit.

In his third and final issue on appeal, the defendant challenges the trial court's imposition of consecutive sentences for his two attempted second-degree murder convictions.

The trial court imposed consecutive sentences on the defendant as a "dangerous offender." *See* T.C.A. § 40–35–115(b)(4). In ordering consecutive sentences, the trial court found as follows:

> The remaining consideration by the court is whether or not to run the sentences consecutive or concurrent. I make reference to T.C.A. 40–35–115, particularly paragraph four: "The defendant is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high."
>
> Mr. Freeman, that sentence which I just read from the statute fits you like a glove. You attempted to kill two people, and in the meantime you shot several other houses, endangering other people's life. It made no difference to you how many people you killed. It's very fortunate that you did not kill six children, whose houses were struck during this assault that you made.
>
> The court finds those facts are particularly aggravating circumstances, in addition to the fact that two or more dangerous crimes were committed.
>
> Mr. Freeman, you have been convicted of other offenses. You have been sent to boot camp. You were released shortly before you were—not too long before you committed this crime. You were on parole at the time. Efforts were made to rehabilitate you. However, those efforts were not successful.
>
> The court finds that consecutive sentences are necessary in this case to protect the public from further criminal conduct by you.

At the conclusion of the findings, the trial court ordered only the defendant's two fifteen year sentences for attempted second-degree murder to be served consecutively, resulting in an effective sentence of thirty years.

■ As we stated above with regard to the defendant's challenge to the length of his sentences, our review of this sentencing issue is *de novo* with a presumption of correctness. *See* T.C.A. § 40–35–401(d). The trial court properly considered all of the relevant sentencing principles and the circumstances surrounding the offenses. The burden of showing that the sentence is improper is therefore upon the defendant. *See* T.C.A. § 40–35–401(d) Sentencing Commission Comments. In order to support the imposition of consecutive sentences as a dangerous offender under T.C.A. § 40–35–115(b)(4), the record must demonstrate that the defendant's behavior indicated little or no regard for human life, that the defendant's behavior indicated no hesitation about committing a crime in which the risk to human life was high, that consecutive sentences are necessary to protect the public from further criminal acts by the defendant, and that the aggregate sentence is reasonably related to the severity of the offenses. *See State v. Wilkerson,* 905 S.W.2d 933, 938 (Tenn.1995).

■ In the present case, the record reveals that the defendant, after an argument, was handed a rifle which he immediately fired toward a departing vehicle occupied by Terrell Davis and Marcus Treadwell. The defendant fired approximately thirty-nine bullets in a residential neighborhood, several of which struck homes occupied by numerous adults and children as well as penetrated the vehicle at which the gun was aimed. We can only conclude, as did the trial court, that these circumstances clearly demonstrate that the defendant's behavior indicated little or no regard for human life and no hesitation about committing a crime in which the risk to human life was high.

Likewise, the record is also clear that consecutive sentences are necessary to protect the public from further criminal conduct by the defendant. As the trial court found during the sentencing hearing, the defendant has numerous prior convictions, including two felony convictions and several misdemeanor convictions. The defendant has been to boot camp and was on parole at the time of the commission of the present offenses. These circumstances indicate that the defendant's potential for rehabilitation is low. As a result, the trial court properly concluded that consecutive sentences were necessary to protect the public from further criminal conduct by the defendant.

With regard to the aggregate length of the consecutive sentences, the defendant asks this Court to consider that his offenses "stemmed from one burst of automatic weapon fire lasting a few seconds" resulting in no deaths and bodily injuries to only one person. We cannot ignore, however, that the defendant was convicted of four serious felonies for his egregious conduct, including two counts of attempted second-degree murder. His grievous actions endangered the lives of several innocent, unaware bystanders who were residing peacefully in their homes when their houses were struck by bullets. Given these circumstances, we can only conclude that the thirty year aggregate length of the defendant's consecutive sentences reasonably relates to the severity of his offenses.

From a review of the entire record, we find that the trial court did not err in imposing consecutive sentences under T.C.A. § 40–35–115(b)(4). The defendant has failed to carry his burden of demonstrating that his sentence was improper, and his third issue is therefore without merit.

For the reasons set out in the discussion above, we find that the defendant's issues on appeal lack merit. His convictions and sentences are hereby affirmed.

WELLES, J., and CORNELIA A. CLARK, Special Judge, concur.