# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT KNOXVILLE

### OCTOBER SESSION, 1997

FILED

December 16, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | C.C.A. NO. 03C01-9611-CC-00427 |
| | ) | |
| Appellee, | ) | |
| | ) | |
| | ) | COCKE COUNTY |
| VS. | ) | |
| | ) | HON. REX HENRY OGLE |
| TREVA STRICKLAND, | ) | JUDGE |
| | ) | |
| Appellant. | ) | (Sentencing) |

## ON APPEAL FROM THE JUDGMENT OF THE
## CIRCUIT COURT OF COCKE COUNTY

FOR THE APPELLANT:

DAVID B. HILL
301 E. Broadway
Newport, TN 37821

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General and Reporter

TIMOTHY F. BEHAN
Assistant Attorney General
425 5th Avenue North
Nashville, TN 37243

AL SCHMUTZER, JR.
District Attorney General

JAMES B. DUNN
Assistant District Attorney General
339A East Main Street
Newport, TN 37821

OPINION FILED _____

AFFIRMED

DAVID H. WELLES, JUDGE

# OPINION

The Defendant, Treva Strickland, appeals as of right pursuant to Rule 3 of the Tennessee Rules of Appellate Procedure. She was convicted by a Cocke County jury of one count of aggravated arson and one count of attempted first degree murder.[1] The trial court sentenced her as a Range I standard offender to twenty-five years imprisonment with the Department of Correction on each count, with the sentences to run concurrently. In this appeal, the Defendant argues that the trial court erred in sentencing her to twenty-five years incarceration. After reviewing the record, we conclude that the Defendant's issue lacks merit. Accordingly, we affirm the judgment of the trial court.

Although the Defendant does not challenge the sufficiency of the evidence, we begin with a summary of the pertinent facts. In September of 1994, the Defendant was married to the victim, Avery Strickland. At that time, however, they were having marital difficulties and the Defendant was actually living with Robert Jenkins in a home behind Brock's Market. On the night of September 25, 1994, the Defendant called Avery Strickland three times. She told him that she had made a mistake in leaving him, that she wished to reconcile, and that she was afraid of Robert Jenkins. She asked Strickland to meet her at a location near her home. Avery Strickland declined on the first two occasions when the Defendant called. On the third occasion, however, he agreed to meet her.

---

[1] Tenn. Code Ann. §§ 39-14-302(a)(1), 39-12-101, 39-13-202(a)(1).

Avery Strickland picked up the Defendant at a gas station near her home. By this time, it was approaching the early morning hours of September 26, 1994. Strickland stated that he wanted to get some coffee at Brock's Market, but the Defendant told him that she already had some for him and handed him a cup of coffee. She then directed him to drive to a remote location on Bluff Road, saying that she was going to give him "something [he had] always wanted." Strickland took this comment to mean oral sex. He drove to the remote location and parked. They talked about a possible reconciliation and began to kiss. Strickland then passed out. He awakened later to see the Defendant outside the car. She told him that she was urinating, and he fell back asleep. The next time he awakened, both he and the car were on fire.

Strickland scrambled out of the car and began to search for the Defendant. He was unable to locate her and soon ran to the highway to get help. Police officers eventually arrived at the scene. According to Deputy Sheriff Doug Adkins, Strickland was burned, seemed disoriented, and appeared to be worried about the Defendant. He was taken to a hospital where he was treated for a burn wound to his head.

Officers searched the area near Strickland's car but were unable to find the Defendant. They located her several hours later at her residence behind Brock's Market. Upon questioning, she denied that she had seen Strickland that night, saying that she had spent the night at home with Robert Jenkins. She added that she "wouldn't be caught dead with Avery Strickland."

Strickland's car was destroyed by the fire. Roy Shinall, an arson investigator, determined that the a fire had been deliberately set in the floor of the front passenger side of the vehicle. Shinall's investigation revealed that the fire had been started with papers and other solid accelerants.

The Defendant later gave two statements in which she implicated herself and Robert Jenkins in the burning of Avery Strickland's car. On January 15, 1995, she gave a statement to Roy Shinall. She told Shinall that on the night of the fire, she had called Avery Strickland and asked to meet him. He agreed and Robert Jenkins gave her something to put in Strickland's coffee. She gave Strickland the coffee and, after drinking it, he passed out. Jenkins then came to Strickland's car. The Defendant and Jenkins set some papers on fire in the front floorboard of Strickland's car and left together.

On February 7, 1995, the Defendant gave a more detailed statement to Detective Robert Caldwell of the Cocke County Sheriff's Department. In that statement, the Defendant still implicated herself in the burning of the car but shifted more of the blame to Robert Jenkins. She stated that Jenkins had come up with the plan "to get rid of Avery." Jenkins took some of the Defendant's Valium pills and "mashed them up." He showed the Defendant the remote location on Bluff Road and instructed her to take Strickland there. She then called Strickland and arranged the meeting. Before meeting Strickland, she put the crushed Valium in a cup of coffee, which she later gave to Strickland. They drove to the remote location, talked for a period of time, and Strickland passed out. The Defendant then saw Jenkins drive up in her car. Jenkins pulled the Defendant out of Strickland's car, retrieved a gallon of gas and a sheet from the

-4-

Defendant's car, and walked back to Strickland's car. The Defendant saw Strickland's car on fire but left the scene, screaming and crying, with Jenkins.

The State introduced proof that Avery Strickland had two life insurance policies with the Defendant named as a beneficiary. One of the policies would have paid the Defendant twenty-seven thousand dollars ($27,000) in the event of Strickland's natural death or one hundred thousand dollars ($100,000) in the event of an accidental death. The other policy was in the amount of two hundred thousand dollars ($200,000), and the Defendant would have received a one-sixth share, or approximately thirty-three thousand three hundred thirty-three dollars and thirty-three cents ($33,333.33) in the event of Strickland's death.

At trial, the Defendant testified that she was not involved in the fire which consumed Avery Strickland's car. She stated that she was home on the night of September 25 to 26, 1994. She admitted having made the incriminating statements, but stated that she did so at Strickland's request because they were still trying to reconcile. According to the Defendant, Strickland told her that she could prove her love for him by making the statements. The Defendant admitted that she knew she was a beneficiary of Strickland's life insurance policies, but claimed that she did not believe she would actually receive any money from his death.

The Defendant was indicted on one count of aggravated arson and one count of attempted first degree murder. She was tried on January 23, 1996. After considering the proof presented at trial, the jury found the Defendant guilty as charged.

In her only issue on appeal, the Defendant argues that the trial court erred in sentencing her to twenty-five years incarceration. Both aggravated arson and attempted first degree murder are Class A felonies. Tenn. Code Ann. §§ 39-14-302(b)(1), 39-12-107(a), 39-13-202. The authorized term of imprisonment for a Range I standard offender convicted of a Class A felony is fifteen to twenty-five years. Tenn. Code Ann. § 40-35-112(a)(1). The trial court sentenced the Defendant to the maximum allowable term of imprisonment for each count, with the sentences to run concurrently. On appeal, the Defendant contends that her sentence is excessive.

When an accused challenges the length, range, or the manner of service of a sentence, this court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

In conducting a de novo review of a sentence, this court must consider: (a) the evidence, if any, received at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement that the defendant made on his own behalf; and (g) the potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, and -210; see State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

If our review reflects that the trial court followed the statutory sentencing procedure, imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

With the Defendant's agreement, the trial court conducted the sentencing hearing immediately after the jury had returned its verdict. The trial judge found two enhancing factors applicable to each offense: 1) That the Defendant was a leader in the commission of an offense involving two or more criminal actors, and 2) that the Defendant abused a position of private trust. See Tenn. Code Ann. § 40-35-114(2), (15). The Defendant suggested as a mitigating factor that she was suffering from a mental condition that significantly reduced her culpability, pointing out that she had been treated at the Cherokee Mental Health Center. The trial court found that the Defendant had not offered sufficient proof to establish that mitigating factor and found no other mitigating factors applicable.

In setting the sentence, the trial judge commented as follows:

> All right, Ms. Strickland, I've been on the Bench now nearly six years, five and a half years, and I've seen some pretty heinous crimes. I've seen multiple murders, child abuse, aggravated rape of a child. And I cannot tell you how this case appears to this Court. I cannot think of much that is more low-down than the acts for which you have been convicted and the circumstances surrounding this offense.
> You lured this man away from his home upon the pretext of -- of wanting to go back and live with him after you had planned -- helped plan a very dastardly murder. And but for the grace of God this man would be dead and you very well could be facing the electric chair. I have watched you throughout this trial. I have sat and watched you. You are a -- are a -- a heartless woman. You are

> a cool, calculating, deliberating woman. And I just don't know much
> worse than what you did in this case.

Based on the circumstances of the offense and the two enhancing factors, the trial judge set the sentence at the maximum in the range, twenty-five years. In so doing, he stated that anything less would depreciate the seriousness of the offenses.

On appeal, the Defendant contends that the trial court improperly applied the two enhancing factors and failed to apply two mitigating factors. With regard to the first enhancing factor, that the Defendant was a leader in the commission of the offenses, we agree with the trial court that it is applicable to both convictions. See Tenn. Code Ann. § 40-35-114(2). At trial, the State introduced statements made by the Defendant indicating that both she and Robert Jenkins were involved in the commission of the crimes. The statement made on February 7, 1995, implies that the idea for the crimes originated with Jenkins. That statement also indicates that it was Jenkins alone who set the fire in the victim's car. Yet the statement made on January 15, 1995, indicates that the Defendant was involved in the setting of the fire. Given the conflicting nature of these statements, the Defendant's participation in the actual setting of the fire is unclear. It is clear, however, that it was the Defendant who called the victim to set up the meeting, lured the victim out with talk of reconciliation, gave the victim coffee laced with Valium to render him unconscious, and directed him to drive to the remote location on Bluff Road. As this Court has previously noted, this enhancement factor does not require that the Defendant be the sole leader but only that she be "a" leader. See State v. Hicks, 868 S.W.2d 729, 731 (Tenn. Crim. App. 1993). We believe that the facts describing her role in the

commission of the offenses are sufficient to support the application of this enhancement factor.

Furthermore, we believe that the trial court properly applied the second enhancement factor, that the Defendant abused a position of private trust. See Tenn. Code Ann. § 40-35-114(15). The Defendant argues on appeal that "the defendant in this case was married to another person at the time of the commission of the offenses and an ordinary prudent person of common intelligence is not justified in placing trust in a person whom they are meeting for an adulterous relationship which is frowned on by our society." Our reading of the record reveals that the Defendant and the victim were, in fact, still married at the time of the commission of the offenses. Although the Defendant was apparently living with Robert Jenkins at that time, they did not marry until January of 1995, approximately four months after the commission of the crimes. Thus, it was the Defendant's position as the victim's estranged wife that allowed her to convince him to meet her with talk of reconciliation. Accordingly, we conclude that the record supports the application of the abuse of private trust enhancement factor.

In addition, we believe that the record supports the application of an enhancement factor which the trial court did not find, namely that during the commission of the felonies, the Defendant willfully inflicted bodily injury upon another person. See Tenn. Code Ann. § 40-35-114(12). The record reveals that the victim suffered a burn wound to the head as a result of the fire set in his car. Tennessee Code Annotated section 39-11-106(a)(2) defines "bodily injury" to include a burn. Tennessee Code Annotated section 40-35-114 provides for the

application of appropriate enhancement factors "if not themselves essential elements of the offense as charged in the indictment." In the case sub judice, the indictment for aggravated arson charged the Defendant with knowingly damaging personal property (Avery Strickland's car) without the consent of all individuals having a proprietary interest therein while Avery Strickland was present in the car. See Tenn. Code Ann. § 39-14-302(a)(1). The indictment for attempted first degree murder charged the Defendant with attempting to commit the premeditated and intentional killing of Avery Strickland. See Tenn. Code Ann. §§ 39-12-101, 39-13-202(a)(1). Thus, bodily injury was not an essential element of aggravated arson or attempted first degree murder as charged in the indictment against the Defendant. See Tenn. Code Ann. §§ 39-14-302(a)(1), 39-13-202(a)(1), 39-12-101; see also State v. Freeman, 943 S.W.2d 25, 32 (Tenn. Crim. App. 1996); but see State v. Makoka, 885 S.W.2d 366, 374 (Tenn. Crim. App. 1994). Accordingly, given the burn wound suffered by the victim as a result of the fire, we conclude that the enhancement factor for willfully inflicting bodily injury upon another person is applicable to both of the Defendant's convictions.

With regard to mitigating factors, the Defendant contends that the trial court erred by not applying Tennessee Code Annotated section 40-35-113(8). That section provides for mitigation if the "defendant was suffering from a mental or physical condition that significantly reduced the defendant's culpability for the offense." The Defendant argues that there was proof at trial that she was taking Prozac and Valium and that she had undergone treatment at the Cherokee Mental Health Center. The record does not, however, contain any information concerning the substance of that treatment or the reasons for her taking prescription medication. Moreover, the Defendant offered no proof regarding

how her alleged mental condition significantly reduced her culpability for the offenses. From this record, we cannot conclude that the trial court erred in denying this mitigating factor.

The Defendant also contends that the trial court erred by failing to consider her lack of a prior criminal record as a mitigating factor pursuant to Tennessee Code Annotated section 40-35-113(13). The record indicates that the Defendant had prior arrests but no prior convictions at the time of the present offenses. The Defendant points out that this Court has previously held that the lack of a criminal history may be considered as a mitigating factor pursuant to Tennessee Code Annotated section 40-35-113(13). See State v. Bingham, 910 S.W.2d 448, 453 (Tenn. Crim. App. 1995). We note, however, that another panel of this Court has held that although "absence of a prior criminal record may be considered under the catch-all provision of Tennessee Code Annotated section 40-35-113(13) . . . . this court is not required to consider this as a mitigating factor." State v. Williams, 920 S.W.2d 247, 261 (Tenn. Crim. App. 1995). Even if we were to conclude that the Defendant's lack of a prior criminal record qualified as a mitigating factor, its significance is negligible given the circumstances of this case. See Williams, 920 S.W.2d at 261.

Thus, from our examination of the record, we believe that there are three enhancement factors applicable to the Defendant's sentences. The sole possible mitigating factor is entitled to little weight. While imposing sentence, the trial court emphasized the egregious circumstances of the Defendant's offenses. As we noted above, the trial judge's impression of the Defendant after hearing her testify at trial was not favorable. From our review, we believe that the trial judge

-11-

gave due consideration to the applicable sentencing principles and that his findings were adequately supported by the record. Affording the sentences the presumption of correctness, we cannot conclude that the trial judge erred or abused his discretion in sentencing the Defendant to the maximum term of imprisonment or that her sentences are excessive.

For the reasons set forth in the discussion above, we conclude that the Defendant's issue on appeal lacks merit. We therefore affirm the judgment of the trial court.

_____
DAVID H. WELLES, JUDGE

CONCUR:


_____
GARY R. WADE, JUDGE


_____
JERRY L. SMITH, JUDGE