IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

JANUARY 1997 SESSION



FILED

December 9, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE | ) | NO. 03C01-9606-CC-00212 |
| | ) | |
| Appellee, | ) | SCOTT COUNTY |
| | ) | |
| v. | ) | HON. LEE ASBURY, JUDGE |
| | ) | |
| TED D. NORRIS | ) | (Sentencing) |
| | ) | |
| Appellant. | ) | |
| | ) | |

FOR THE APPELLANT

Michael G. Hatmaker
P.O. Drawer 417
Jacksboro, Tennessee 37757

FOR THE APPELLEE

John Knox Walkup
Attorney General and Reporter
450 James Robertson Parkway
Nashville, Tennessee 37243-0493

Michael J. Fahey, II
Assistant Attorney General
450 James Robertson Parkway
Nashville, Tennessee 37243-0493

Alfred C. Schmutzer, Jr.
District Attorney General
125 Court Avenue, Room 301-E
Sevierville, Tennessee 37862

OPINION FILED:_____

AFFIRMED AS MODIFIED

WILLIAM M. BARKER, JUDGE

**OPINION**

The Appellant, Ted D. Norris, files his second direct appeal to this Court challenging the sentences he received from convictions in the Criminal Court of Scott County. After a trial by jury, the Appellant was convicted and sentenced on two counts of assault with intent to commit first degree murder, two counts of armed robbery, one count of aggravated kidnapping, and one count of grand larceny. He argues on appeal that his sentences on the two counts of assault with intent to commit first degree murder were excessive and that the trial court erred in ordering those sentences to be served consecutively.[1]

After a careful review of the record, we affirm the Appellant's sentences on the two counts of assault with intent to commit first degree murder, as set under the 1989 Sentencing Reform Act. We find, however, that the trial court entered an improper judgment against the Appellant on a second count of grand larceny and omitted a judgment on the sentence for aggravated kidnapping. This error was not raised on appeal; however, we find that it is plain on the face of the record.[2] We, therefore, affirm Appellant's sentences but modify the judgments to include the fifteen (15) year sentence for aggravated kidnapping and to remove the extra count of grand larceny.

**FACTUAL BACKGROUND**

This case has a long and tortured history. In 1990, the Appellant was convicted by a jury and sentenced on two counts of assault with intent to commit first degree murder, Class A felonies; two counts of armed robbery, Class B felonies; one count of grand larceny, a Class D felony; and one count of aggravated kidnapping, a Class A felony. The trial court sentenced the Appellant as a Range I standard offender under

_____

[1]The Appellant does not challenge the sentences or convictions on the other counts.

[2]Ordinarily, the appellate courts in this State do not consider issues that are not raised in the trial court. See State v. Pritchett, 621 S.W.2d 127, 135 (Tenn. 1981). However, if the error is plain on the face of the record, it is a proper consideration for an appellate court whether properly assigned or not. See State v. Ogle, 666 S.W.2d 58, 60 (Tenn. 1984); State v. Mackey, 553 S.W.2d 337, 340 (Tenn. 1977). Rule 52(b) of the Tennessee Rule of Criminal Procedure states that an error affecting "the substantial rights of the accused" may be noticed at any time "where necessary to do substantial justice."

the Sentencing Reform Act of 1989 and ordered him to serve twenty five (25) years for

each count of assault with intent to commit first degree murder, eight (8) years for

each count of aggravated robbery, three (3) years for the count of grand larceny, and

fifteen (15) years for the count of aggravated kidnapping.[3]  The Appellant was ordered

to serve each sentence concurrently, except for the sentences on the two counts of

assault with intent to commit first degree murder.  Those sentences were ordered to

run consecutive to each other for a total effective sentence of fifty (50) years in the

Tennessee Department of Correction.

The Appellant, thereafter, filed his first direct appeal to this Court challenging

both his convictions and sentences.  The facts surrounding the charges against the

Appellant were set forth in the original appeal as follows:

> [O]n June 2, 1988, appellant was being held in the Scott County
> Jail on a parole revocation warrant after being arrested for D.U.I.  During
> the late afternoon or early evening, appellant yelled out the window of
> his second floor cell and told the officers below that he was slashing his
> wrists.  When Deputy Sheriff Danny Douglas reached appellant's cell, he
> discovered that appellant had made some shallow cuts in his wrists with
> an antenna he had broken off a small television set.  After the officer
> administered first aid, appellant was moved to a third floor cell that was
> specially prepared for prisoners who attempted to harm themselves.
>
> Sometime around nine o'clock in the evening, appellant began
> kicking at the door and screaming that the sheriff had killed and chopped
> up his children and that his wife was having sex with the men in the cells
> across from him.  After the deputy arrived, appellant became quiet and
> laid down on the floor of the cell.  Within a short time, appellant once
> again began screaming and yelling that his entire family was dead.  The
> jail administrator decided that appellant should be taken to a hospital for
> a mental evaluation.
>
> Officers James Massey, Jr. and David Beets were at their
> respective homes when they received the call to transport appellant to
> the Scott County Hospital so that a doctor could sign the appropriate
> order transferring appellant to the Lakeshore facility in Knoxville.  When
> Massey and Beets went to the cell and opened the door, appellant came
> rushing at them.  They pushed him back inside the cell, wrestled him to
> the floor, and finally managed to handcuff him.  When the officers led

---

[3]The Appellant was charged with aggravated kidnapping under Tennessee Code Annotated section 39-2-301 (repealed 1990).  Under that provision, aggravated kidnapping was a Class A felony. See Tenn. Code Ann. § 40-35-118 (1990).

him from the cell, appellant was wild-eyed. He had a bruise and a knot on his forehead, his hair was in disarray, and he was dressed only in his undershorts. Appellant's shirt and trousers were lying on the floor of the cell, and he and his clothing were soaking wet. Deputy Massey described appellant's body as slick and slimy. Since he was wearing no shirt, Deputy Beets grabbed him by the hair to steer him to the booking room and the patrol car.

During the scuffle with appellant, Deputy Beets ripped his pants. In order to change his pants, the officers drove to the house where Beets was living. Beets entered the house, changed his clothes, and returned to the car.

Upon arrival at the Scott County Hospital, Deputy Massey entered and returned with Dr. Latell. Dr. Latell sat on the passenger side of the front seat and partially opened the sliding window which separated the front from the back seat. He spoke briefly with appellant and decided that appellant's condition would not justify sending him to the Lakeshore facility. Neither deputy was in the car during Dr. Latell's interview with appellant. Deputy Massey was standing nearby, but Deputy Beets was inside the building.

After concluding that committing appellant to Lakeshore was not necessary, Dr. Latell and Deputy Massey returned to the emergency room to complete the paperwork. Deputy Beets met them and the three men entered the hospital together. Appellant was left sitting in the patrol car alone. The keys were in the ignition and a loaded shot gun was in the rack.

While Dr. Latell was at the desk filling out the required form, appellant entered the emergency room. A handcuff was dangling from one wrist. He was holding the shot gun in his other hand. He began screaming that the rest of the deputies at the jail were dead and that now it was their turn. In response to appellant's order, both deputies placed their service revolvers on a counter. Appellant picked up the revolvers and told the officers to sit. As soon as they complied, he began firing. Unbeknownst to appellant, an emergency room nurse observed the confrontation and described appellant as "mad." At this time Dr. Latell left the room. Appellant shot Deputy Beets four times and Deputy Massey three times. Appellant then left the emergency room carrying the revolvers and drove the patrol car away.

Appellant drove first to the home of his ex-brother-in-law. Finding no one home, he left the patrol car parked there and crossed the fields to the home of Jerry Terry. Appellant forced his way past Terry's two sons and wife and into the Terry house. While assuring everyone that he would not hurt them, appellant claimed he needed Terry as a hostage to keep himself alive. He and Terry went to the back porch. According to Terry's testimony, appellant was "all to pieces" and confused and insisted that he had been gassed at the jail. Appellant told Terry that he had taken off his clothes, soaked them, and stuffed them in the cracks to

prevent the gas from entering his cell.  Eventually, appellant was persuaded to let a deputy enter and to let Terry leave the house.

After speaking with Clifton Sexton, an assistant district attorney general in Scott County, who had known appellant for years, appellant made a statement to Charles Scott, a T.B.I. special agent.  Agent Scott advised appellant of his rights, and appellant executed a waiver.  In his statement, appellant said that Sheriff Laxton and the other officers were trying to kill him by pumping natural gas in his cell.  He also said that an officer had scratched his arm with a broken television antenna.  Appellant told Sexton that he knew the difference between right and wrong, was not crazy, and had shot the deputies because he did not want to be killed.

See State v. Ted. D. Norris, C.C.A. No. 03C01-9209-CR-00331 (Tenn. Crim. App., Knoxville, Apr. 24, 1994) (footnotes omitted).

In the first appeal, we affirmed the Appellant's convictions on all counts, but were unable to review the sentencing issues due to an incomplete record.[4]  We, therefore, remanded the case to the trial court for a new sentencing hearing.  See Norris, C.C.A. No. 03C01-9209-CR-00331.

Shortly thereafter, we entered an order allowing the trial court to rely on the original sentencing hearing transcript, if located and refiled, instead of conducting a second hearing.  The original transcript was subsequently filed with the trial court, and on July 28, 1995, the trial court resentenced the Appellant without conducting a second hearing.  The trial court sentenced the Appellant as a Range I offender under the Sentencing Act of 1982.  The sentences were identical to those in the 1990 judgments, except that the trial court omitted the conviction for aggravated kidnapping and included an extra count of grand larceny.

The Appellant now appeals directly to this Court, for a second time, challenging the length and consecutive nature of the sentences he received on the two counts of assault with intent to commit first degree murder.  He does not challenge the

---

[4]During the first appeal, the final volume of the trial transcript which contained the sentencing hearing was never received by this Court.  The Appellant noted the missing transcript and attempted, unsuccessfully, to rectify the error.  Through no fault of the Appellant, the missing volume was either not prepared or not filed with the trial court clerk until after the first appeal.

5

sentences he received from the other convictions. Consequently, upon correcting the judgments to include the sentence for aggravated kidnapping and to remove the extra count of grand larceny, those sentences are final.

## ANALYSIS

Initially, we find that the trial court did not evaluate the Appellant's sentences under the guidelines set forth in State v. Pearson, 858 S.W.2d 879, 884 (Tenn. 1993). The Appellant was sentenced in 1990 for offenses he committed in 1988. Under Pearson, the trial court was required to evaluate the Appellant's sentences under both the 1982 Sentencing Act and the 1989 Act and to impose the least onerous sentence. See id. The record here reflects that the trial court relied upon the 1989 Act at the sentencing hearing. However, there is no evidence that the trial court conducted the proper Pearson analysis.

Ordinarily, we would remand the case for a new sentencing hearing to correct the trial court's errors under Pearson.[5] However, in the interest of judicial economy and due to the extended procedural history in this case, we have elected to conduct a Pearson analysis without remand to the trial court. From our *de novo* review, we have compared the likely sentences that the Appellant could receive under both the 1982 Sentencing Act and the 1989 Act. We find that the 1989 Act provides the less onerous sentences, and therefore, conclude that the trial court properly ordered the Appellant's sentences under that Act.[6] Furthermore, we rely on the 1989 Act to address the sentencing issues in this appeal.

---

[5]See State v. Melvin, 913 S.W.2d 195, 201 (Tenn. Crim. App. 1995), *per. app. denied* (Tenn. 1995); State v. Goodwin, 909 S.W.2d 35, 45 (Tenn. Crim. App. 1995).

[6]The record reflects that the trial court sentenced the Appellant and entered the original 1990 judgments under the Sentencing Reform Act of 1989. However, the amended judgments entered in 1995 show that the trial court sentenced the Appellant under the 1982 Act. Nevertheless, we find that the trial court did not change or otherwise alter the length or nature of Appellant's sentences from the original 1990 judgments. The only difference between the 1990 judgments and the 1995 judgments is the trial court's error in omitting the aggravated kidnapping conviction and including an extra count of grand larceny. We, thus, conclude that any Pearson error concerning Appellant's sentences is harmless beyond a reasonable doubt. Furthermore, in this appeal, the Appellant does not challenge his sentences on the counts of aggravated robbery, grand larceny, and aggravated kidnapping. Therefore, aside from correcting the 1995 judgments to include the proper counts of grand larceny and aggravated kidnapping, we limit our analysis to Appellant's sentences on the assault convictions.

## I.

The Appellant first contends that the trial court erred in imposing the maximum sentences on the two counts of assault with intent to commit first degree murder. He argues that the trial court misapplied two enhancement factors and failed to consider a mitigating factor. Although we find that the trial court erred in applying enhancer (3) to the assault convictions, we conclude that the remaining enhancers support the maximum sentences for each conviction.

When a defendant complains of his or her sentence, we must conduct a *de novo* review of the record. See Tenn. Code Ann. § 40-35-401(d) (1990). The sentence imposed by the trial court is accompanied by a presumption of correctness and the appealing party has the burden of showing that the sentence is improper. See Tenn. Code Ann. § 40-35-401(Sentencing Commission Comments). That presumption, however, is conditioned upon an affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. See State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

At the time of the Appellant's offenses, the minimum sentence within the set range was the presumptive sentence for Class A felonies. If there were enhancing and mitigating factors, the trial court was required to start at the minimum sentence in that range and enhance the sentence as appropriate for the enhancement factors and then reduce the sentence as appropriate for the mitigating factors. If there were no mitigating factors, the trial court could set the sentence above the minimum but still within the range. See Tenn. Code Ann. § 40-35-210(d)-(e) (1990).

The trial court sentenced the Appellant, as a Range I offender, to the maximum twenty five (25) years for each count of assault with intent to commit first degree murder.[7] The trial court found the following enhancement factors: (1) The Appellant has a previous history of criminal behavior; (3) The offenses involved more than one

---

[7]For Range I standard offenders, a Class A felony carries a sentencing range of fifteen (15) to twenty five (25) years. See Tenn. Code Ann. § 40-35-112(a)(1)(1990).

7

victim; (8) The Appellant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community; (9) The Appellant possessed and employed a firearm during the commission of the offenses; and (14) The felonies were committed on escape status or while incarcerated for a felony conviction. See Tenn. Code Ann. § 40-35-114 (1), (3), (8), (9), and (14) (1990). The trial court did not find any mitigating factors.

The Appellant first challenges the application of enhancer (1) to his convictions of assault with intent to commit first degree murder. Tenn. Code Ann. § 40-35-114(1). He contends that the use of enhancer (1) was improper because his prior criminal history consists solely of a 1986 felony conviction for passing a forged instrument and witness testimony concerning prior criminal behavior.[8] He argues that the non-violent offense in 1986 coupled with mere allegations of prior criminal behavior is insufficient to support the use of enhancer (1). If the trial court chose to accredit the testimony of the witnesses regarding the Appellant's prior assault upon his sister and his use of a knife during a fight, then Appellant's prior history of criminal behavior was established.[9] Obviously, the trial court accredited those witnesses.

Moreover, we find additional evidence from the presentence report that the Appellant has a long list of criminal convictions in Scott County. His prior criminal history dates back to June 15, 1970, and includes public drunkenness, possession of marijuana, contributing to the delinquency of a juvenile, criminal trespass, diversion of

---

[8]Two witnesses at the sentencing hearing testified concerning the Appellant's past criminal behavior. Clifton H. Sexton testified that the Appellant had assaulted his own sister with a gun approximately six years before Appellant's trial. Another witness, Phillip L. Burchfield, testified that he and the Appellant had been in a fight in which the Appellant attempted to slash him with a knife. That incident occurred approximately twenty years before the trial. The police were never contacted concerning either incident.

[9]The Appellant relies on State v. Marshall, 870 S.W.2d 532, 542 (Tenn. Crim. App. 1993), to assert that the witness testimony regarding his prior criminal behavior should not have been used to enhance his sentences. The Appellant's reliance on Marshall is misplaced. The rule in Marshall prohibits the use of arrest records to enhance a defendant's sentence. See id. In this case, however, the testimony of the two witnesses went further than a mere arrest record to demonstrate the Appellant's prior criminal behavior. We find that it was properly considered by the trial court.

8

electric power, and passing a bad check. That evidence demonstrates a previous history of criminal behavior and supports the application of enhancer (1).

The Appellant also challenges the application of the "multiple victims" enhancer. Tenn. Code Ann. § 40-35-114(3) (1990). He contends that the use of enhancer (3) was improper because he was charged and convicted for the felonious assaults on each victim.[10] We recognize that enhancer (3) is not applicable when the defendant is convicted on separate counts for each victim. See State v. Freemon, 943 S.W.2d 25, 31 (Tenn. Crim. App. 1996). In this case, the Appellant was convicted on two counts of assault with intent to commit first degree murder based upon his acts against the two police officers. Accordingly, the application of enhancer (3) to the assault convictions was improper.

The Appellant next contends that the trial court erred in failing to apply a mitigating factor to his assault convictions. He argues that during the commission of the felonies, he was suffering from a diminished mental capacity. Tenn. Code Ann. § 40-35-113(8) (1990). We disagree. In this case, although there was evidence that the Appellant experienced mental delusions before he shot the two officers, the only medical testimony at trial revealed that he did not have a mental illness. Doctor Latell testified that, before the shooting, the Appellant was free of any mental illness sufficient to commit him to a mental hospital.

The evidence shows that the Appellant had the clarity and presence of mind to free himself from a police car and calculate his brutal attack upon the police officers. We find that the Appellant has failed to prove that he suffered from a diminished mental capacity sufficient to reduce his culpability for the criminal assaults. Moreover, even if that mitigator applied, it would be greatly outweighed by the existing enhancement factors.

_____

[10]In its brief, the State failed to argue why the application of enhancer (3) was proper in this case. Nevertheless, we fully address the issue in our *de novo* review.

9

In summary, we find that although the trial court erred in applying enhancer (3) to the assault convictions, the trial court properly applied enhancer (1). Furthermore, the trial court relied on enhancement factors (8), (9), and (14) which have not been challenged on appeal. Tenn. Code Ann. § 40-35-114 (8), (9), and (14) (1990). Accordingly, we conclude that the weight of the applicable enhancers, coupled with a lack of mitigating factors, supports the maximum twenty-five (25) year sentence on each count of assault with intent to commit first degree murder.[11]

## II.

The Appellant next contends that the trial court erred in ordering him to serve consecutive sentences on the two counts of assault with intent to commit first degree murder. He argues that the trial court failed to properly articulate reasons for ordering consecutive sentences. He further contends that the record fails to support his consecutive sentences or show that they are necessary to protect the public from his further criminal acts. This issue is without merit.

The issue of consecutive sentencing is governed by Tennessee Code Annotated section 40-35-115 (1990). If a defendant is convicted of more than one criminal offense, the trial court may order the sentences to run consecutively if it finds by a preponderance of the evidence that "[t]he defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high." See Tenn. Code Ann. § 40-35-115 (4). Furthermore, under State v. Wilkerson, 905 S.W.2d 933, 939 (Tenn. 1995), the trial court must determine whether the consecutive sentences (1) reasonably relate to the severity of the offenses committed; (2) serve to protect the

---

[11]The State contends that enhancers (5), (6), and (10) should also apply to the Appellant's assault convictions. Tenn. Code Ann. § 40-35-114 (5), (6), and (10) (1990). Those enhancers apply in circumstances where the defendant treats the victim[s] with exceptional cruelty, inflicts great personal injuries, and exhibits no hesitation about committing a crime when the risk to human life was high. See id. Based upon our decision to affirm the maximum sentences, we need not address the application of those enhancers.

public from further criminal conduct by the defendant; and (3) are congruent with the general principles of sentencing.

In this case, the trial court found that the Appellant was a dangerous offender who exhibited a very low regard for human life and a willingness to cause great risk to human life. That finding is supported by undisputed evidence in the record that the Appellant entered a hospital emergency room with a loaded shotgun and proceeded to disarm two police officers and shoot them multiple times with their revolvers. The Appellant not only attempted to brutally murder the two officers, but he also jeopardized the lives of several hospital employees who were present in the emergency ward. After the shooting, the Appellant stole a police car and thereafter held a family hostage at gun point for several hours before he finally surrendered. That evidence clearly supports the trial court's finding that the Appellant is a dangerous offender under Tennessee Code Annotated section 40-35-115 (4). The Appellant demonstrated a low regard for human life and he showed no hesitation about committing a crime in which the risk to human life was high.

From our *de novo* review, we also find that the Appellant has a record of extensive criminal activity pursuant to Tennessee Code Annotated section 40-35-115 (2) (1990). The Appellant's presentence report indicates that he has several convictions including diversion of electric power, public drunkenness, criminal trespass, passing a bad check, possession of marijuana, and contribution to the delinquency of a juvenile. Furthermore, there was testimony that the Appellant, though not charged or convicted, had previously assaulted his sister with a gun and had attempted to slash a man with a knife during a fight.

Based upon evidence in the record, we affirm the trial court's finding that the Appellant is a "dangerous offender," and we further find that he has a record of extensive criminal activity. However, that alone is not enough to warrant consecutive sentences. See Wilkerson, 905 S.W.2d at 938-39. We must also consider whether

the consecutive sentences reasonably relate to the severity of the crimes, serve to protect the public from further criminal acts by the defendant, and conform to the general principles of sentencing. See id at 938-39.

From our *de novo* review of the record, we find that the Wilkerson factors are fully met in this case. The Appellant's record shows a continuous history of criminal behavior which has not been rehabilitated, but instead has become increasingly more violent during his life. The assault offenses in this case were extremely brutal and were committed while the Appellant was serving a sentence for a prior felony conviction. Under those circumstances, the record supports a finding that the consecutive sentences are necessary to protect the public from further criminal acts by the Appellant. Moreover, the sentences reasonably relate to the severity of the present offenses. Accordingly, we conclude that the consecutive sentences are appropriate and congruent with the general principles of sentencing.

Based upon the foregoing, Appellant's consecutive sentences for the two convictions of assault with intent to commit first degree murder are affirmed. The judgments, however, are modified to include the fifteen (15) year sentence for aggravated kidnapping and to remove the extra count of grand larceny.

_____
WILLIAM M. BARKER, JUDGE


CONCUR:


_____
JOSEPH M. TIPTON, JUDGE


_____
CURWOOD WITT, JUDGE

12

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

JANUARY 1997 SESSION

| STATE OF TENNESSEE | ) | NO. 03C01-9606-CC-00212 |
| | ) | |
| Appellee, | ) | Scott County No. 6231 |
| | ) | |
| v. | ) | HON. LEE ASBURY, JUDGE |
| | ) | |
| TED D. NORRIS | ) | (Sentencing) |

13

Appellant. )

)    Affirmed as Modified

<u>                                   JUDGMENT</u>

Came the Appellant, by and through counsel, and also came the attorney general on behalf of the State, and this case was heard on the record on appeal from the Criminal Court of Scott County; and upon consideration thereof, this Court is of the opinion that the judgment of the trial court should be affirmed as modified.

In accordance with the opinion filed herein, it is, therefore, ordered and adjudged by this Court that the Appellant's consecutive sentences of twenty five (25) years for each count of assault with intent to commit first degree murder are affirmed; but the judgments are modified to include the sentence of fifteen (15) years for aggravated kidnapping and to remove the extra count of grand larceny. This case is remanded to the Criminal Court of Scott County for further proceedings in accordance with this Court's opinion and for the collection of the costs accrued below.

It appearing that the Appellant is indigent, the costs of this appeal will be paid by the State of Tennessee.

William M. Barker, Judge
Joseph M. Tipton, Judge
Curwood Witt, Judge