IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs March 20, 2001

## STATE OF TENNESSEE v. JOHNNY F. DUGGER

**Direct Appeal from the Criminal Courts for Carter and Washington Counties**
**Carter County Nos. S14657-S14667; Washington County Nos. 25383-25384-A**
**Robert E. Cupp, Judge**

---

**Carter County No. E2000-02385-CCA-R3-CD**
**Washington County No. E2000-01312-CCA-R3-CD**
**April 19, 2001**

---

The defendant pled guilty to four charges arising out of events in Carter County and thirteen charges arising out of events in Washington County. Other than a forgery charge in Carter County, the charges all stemmed from criminal acts occurring on March 12, 1999, when the defendant and a friend broke into two vehicles parked at a local night spot in Johnson City, stealing various pieces of sound equipment. When confronted by two security guards, the defendant knifed one guard and ran into the other with his car. A high-speed chase involving the defendant and officers of the Johnson City Police Department ensued. The chase, crisscrossing between Washington and Carter Counties, ended with the apprehension of the defendant, who was subsequently charged with, and pled guilty to: DUI; driving with a suspended license; aggravated assault of the two security guards; felony evading arrest (two counts); automobile burglary (two counts); theft under $500 (two counts); aggravated assault of two Johnson City police officers; and assault of another officer. According to a plea agreement, the defendant received an effective sentence of eight years as a Range I, standard offender. The trial court denied probation and any community-based alternative to incarceration and ordered that the defendant serve his sentence in the Tennessee Department of Correction. In this appeal, the defendant presents one issue for our review: whether the trial court appropriately sentenced him as to the manner of service of his sentence. The judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Courts Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JERRY L. SMITH and JOE G. RILEY, JJ., joined.

Frederick M. Lance, Johnson City, Tennessee, for the appellant, Johnny F. Dugger.

Paul G. Summers, Attorney General and Reporter; Peter M. Coughlan, Assistant Attorney General; Joe C. Crumley, Jr., District Attorney General; and Steven R. Finney, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The defendant, Johnny F. Dugger, was indicted by a Carter County Grand Jury for a total of four criminal offenses. Three of the offenses arose out of an episode on March 12, 1999. The fourth offense, passing a forged check, was unrelated to the other offenses and occurred some six months later on September 10, 1999. The defendant was also indicted by a Washington County Grand Jury for a total of thirteen criminal offenses, all of which arose out of events occurring on March 12, 1999. The defendant pled guilty and was sentenced for all Carter County and Washington County charges in a consolidated hearing held in Jonesborough, Washington County. The defendant received an effective sentence of eight years as a Range I, standard offender. While in county jail, the defendant agreed to have all cases heard in Carter County for the purpose of determining the manner of service of his sentence. A hearing was held on April 28, 2000, at which the defendant sought probation for these offenses. At that time, the trial court ordered all eight years served in the Department of Correction. This court agreed to consolidate the appeals filed in both the Carter County and Washington County cases. In this consolidated appeal, the defendant challenges the manner of service of his sentence, asserting that the trial court erred in failing to allow him to serve his sentence either on total probation or some other form of alternative sentencing. We affirm the judgment of the trial court.

**FACTS**

On Friday, March 12, 1999, police in Johnson City attempted to stop the defendant for speeding. The defendant set out on what was to be his first chase of the day with police. Sergeant Michael Harris with the Johnson City Police Department testified at the probation hearing that the decision was made finally to call off the chase because it was for a traffic violation only, and the policy of the department was to avoid high-speed chases where there was danger to the public. The defendant got away that time. Some three to four hours later the same evening, a call came in to the police involving the same car. This time the defendant and a friend, Willie Joe Whitson, had been caught by two security guards at a Johnson City night spot, Nashville Sound, where the defendant and Whitson had broken into a Dodge truck belonging to William Gardner and a Ford Bronco belonging to William Miller. The defendant and Whitson were taking an AM-FM cassette player out of the Bronco and a CB radio and stereo out of the Dodge truck. The defendant cut one guard, Eddie Holmes, with a knife and ran into the other one, James Jones, with his car. Sergeant Harris testified that this time the police "felt like he [the defendant] had to be stopped at whatever cost and whatever use of force so we continued pursuit until it ended with his wreck." The pursuit was a wild and potentially deadly one. The defendant was so intoxicated that he testified that he could "remember driving the car but anything after that I -- I don't remember. I know whenever I woke up, I was in the hospital and I stayed in the hospital for about seven (7) or eight (8) days."

In this second pursuit of the defendant, Sergeant Harris testified that, with lights flashing, he picked up the defendant's car as it sped out of Johnson City. Harris testified to the following events:

We proceeded east towards Carter County roughly running sixty (60) plus miles an hour on Elizabethton Highway. We come into Carter County at the intersection of what they refer to as "Malfunction Junction." It's the intersection of Highway 67. And at that point in time he turned and went back west towards Johnson City on Highway 67. Speeds increased around eighty (80), eighty-five (85) at that point in time. Several times myself and other cruisers, we were coming back into a traffic area. I was going to try to go around him and see if we could slow the pursuit and direct the pursuit away from the traffic. At that point in time he tried to run me into the median on two -- two occasions, would not let me go around me [sic]. When we got back into Johnson City at the King Springs Road/East Main Street exit off of 67, we went up the ramp. At the end of the ramp I had several other cruisers there. He was unable to negotiate the turn across two lanes of traffic, concrete median into the opposing lane of traffic, striking one of my officer's [Officer Daniel Kneaskern] cruisers in the -- knocking his bumper off. And at that point in time he was stopped, but he reinitiated his motion and went down King Springs Road back east towards Carter County again. Before he got to the Johnson City/Elizabethton Highway -- 321 I believe is what the number is -- he shut his lights down. He crossed that intersection roughly going forty (40), fifty (50) miles an hour which is a stop intersection. It is a real dangerous intersection. We have a lot of wrecks there. And went across the road, took the first left turn, lost control of the vehicle at that point in time, struck a mailbox and then hit a fenced area. I tried to block him into his car with my cruiser and was unable to do so. He jumped out to the hood of his car, over several fences, and was apprehended a short time later by Officer Jenkins and a trooper.

The defendant fought arrest, struggling until he was finally subdued by Officer Eric Jenkins, who had lept over two fences, including an electric one, during the foot chase. As a result of this evening's events, the defendant eventually pled guilty to and was sentenced for each of the following charges:

> In Washington County (Johnson City): DUI; driving with a suspended driver's license; aggravated assault of James Jones; aggravated assault of Eddie Holmes; felony evading arrest; automobile burglary of William Gardner's vehicle; automobile burglary of William Miller's vehicle; theft under $500 of William Gardner's CB radio and stereo; theft under $500 of William Miller's AM-FM cassette player;

-3-

aggravated assault of Officer Kneaskern; and aggravated assault of Sergeant Harris.[1]

In Carter County: felony evading arrest; and assault of Officer Jenkins.[2]

All of the Carter County sentences were ordered served concurrently with those from Washington County. The Washington County sentences were ordered served concurrently except for two of the four aggravated assault charges, Class C felonies, each for four years, which were ordered served consecutively for an effective sentence of eight years.[3]

## ANALYSIS

The single issue presented in this appeal is whether the trial court erroneously ordered the defendant to serve his entire sentence in the Department of Correction rather than on full probation or in some community-based alternative form of punishment. The State counters that the evidence, combined with the nature of the offenses and the established need for deterrence, support the trial court's conclusion that incarceration, rather than probation or any other alternative sentence, was necessary.

When an accused challenges the length, range, or manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In conducting a *de novo* review of a sentence, this court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancing factors, (g) any statements made by the accused in his own behalf, and (h) the accused's potential or lack of potential for rehabilitation or treatment. See Tenn. Code Ann. §§ 40-35-103 and -210; see also State v. Scott, 735 S.W.2d 825, 829 (Tenn. Crim. App. 1987).

---

[1] Charges for violation of implied consent and felony reckless endangerment were dismissed on motion of the State.

[2] A charge of resisting arrest was dismissed on motion of the State. The defendant also pled guilty to the September 10, 1999, forgery charge.

[3] We note, as does the State, that the judgment forms indicate both that the defendant pled guilty and that he was found guilty. The judgment form for a single conviction should show one or the other resolution, but not both. In this case, the defendant clearly pled guilty to the offenses.

The Tennessee Criminal Sentencing Reform Act of 1989, enacted to "promote justice," provides that the sentence imposed upon an offender should be the "least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. § 40-35-102 & 103(4) (1997). When the trial court determines the appropriate combination of sentencing alternatives to be imposed, it must consider the following:

> (1)  The evidence, if any, received at the trial and the sentencing hearing;
>
> (2)  The presentence report;
>
> (3)  The principles of sentencing and arguments as to sentencing alternatives;
>
> (4)  The nature and characteristics of the criminal conduct involved;
>
> (5)  Evidence and information offered by the parties on the enhancement and mitigating factors in §§ 40-35-113 and 40-35-114; and
>
> (6)  Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

Id. § 40-35-210(b)(1)-(6).

### Issue I.  Full Probation

The defendant first asserts that he should have been ordered to serve his eight-year sentence on full probation.[4]  Our legislature has provided that a defendant "shall be eligible for probation under the provisions of this chapter if the sentence actually imposed upon such defendant is eight (8) years or less[.]"  Tenn. Code Ann. § 40-35-303(a) (1997).

A defendant may be not only eligible for probation according to section 40-35-303(a), but also presumptively a favorable candidate for sentencing options other than incarceration pursuant to Tennessee Code Annotated Section 40-35-102(5)-(6). To be presumptively considered a favorable candidate for options other than incarceration, a defendant must first *not* fall within the parameters of Section 40-35-102(5), that is, a defendant must not be one of that class of "convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the

---

[4]Probation was denied for each of the following six offenses:  (1) felony evading arrest in Carter County; (2) felony evading arrest in Washington County; (3) aggravated assault of Sergeant Harris; (4) aggravated assault of Officer Kneaskern; (5) aggravated assault of security guard James Jones; and (6) aggravated assault of security guard Eddie Holmes.

laws and morals of society, and evincing failure of past efforts at rehabilitation." Id. § 40-35-102(5). These characteristics are not stated in the alternative but rather in combination. If a defendant is not a member of the class of defendants described in subdivision (5) as those for whom incarceration is a priority, the defendant must still meet the characteristics set out in subdivision (6). According to this subdivision, the defendant "who does not fall within the parameters of subdivision (5) and who is an especially mitigated or standard offender convicted of a Class C, D or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Id. § 40-35-102(6).

Guidance as to what may constitute evidence to the contrary, or evidence sufficient to rebut the presumption of favorable candidacy for alternative sentencing options, is found in Tennessee Code Annotated Section 40-35-103. See State v. Bingham, 910 S.W.2d 448, 454 (Tenn. Crim. App. 1995); see also State v. James A. Howard, No. 03C01-9608-CC-00284, 1997 WL 81221, at *2 (Tenn. Crim. App. Feb. 24, 1997) ("When imposing a sentence of total confinement, our Criminal Sentencing Reform Act mandates the trial court to base its decision on the considerations set forth in Tennessee Code Annotated section 40-35-103.") In that section, our legislature has determined that sentences involving confinement should be based on a number of specific considerations:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Id. § 40-35-103(1)(A)-(C). Additionally, "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed." Id. § 40-35-103(5). "[W]here the record adequately shows that one of these particular considerations outweighs a defendant's rehabilitative capabilities," confinement may be the appropriate sentence. State v. Fletcher, 805 S.W.2d 785, 788 (Tenn. Crim. App. 1991). "In fact, the presence of sufficient evidence to bring these considerations into play, other than deterrence and offense seriousness, would usually mean that the presumption of rehabilitative capabilities would be rebutted." Id.

Here, the defendant is eligible for consideration for probation, having received an effective sentence of eight years. The trial court considered whether the defendant was entitled to the statutory presumption favoring alternative sentencing in his case:

> In determining the defendant's suitability for alternative sentencing, you first must determine whether or not he's entitled to the statutory presumption that he's a favorable candidate for alternative sentencing. To be eligible for this statutory presumption, three requirements must be met. One, he must be convicted of a Class D or E -- C, D or E felony. He meets that requirement. These [offenses] are all classified I think. The most serious was a C and that was probably that Aggravated Assault. So he meets that statutory presumption. Secondly, he must be sentenced as a mitigator or a standard offender. He meets that burden. Third, and he must not have a criminal history evincing either a clear disregard for the laws and morals of society, or a failure at past efforts at rehabilitation. And I'll get in the report in just a moment. He doesn't meet that standard.

The "third standard" applied by the trial court is based on Tennessee Code Annotated Section 40-35-102(5), which creates the class of convicted felons for whom incarceration is a priority and from which a defendant must be excluded before the additional criteria of 40-35-102(6) come into play. The class of convicted felons for whom incarceration is a priority has three parts, stated in combination, not as alternatives. Incarceration is a priority for those convicted felons: (1) "committing the most severe offenses"; (2) "possessing criminal histories evincing a clear disregard for the laws and morals of society"; and (3) "evincing failure of past efforts at rehabilitation." Id. § 40-35-102(5). Although "severe" is not defined in the Code, "serious" is a term that courts in this state have defined. An offense is serious enough to deny alternative sentencing when the circumstances of the committed offense are "'especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree' . . . ." Bingham, 910 S.W.2d at 454 (quoting State v. Hartley, 818 S.W.2d 370, 374-75 (Tenn. Crim. App. 1991)). Here, the trial court did note, in considering Tennessee Code Annotated 40-35-103(1)(B), that, "[t]he seriousness of the offense has got to be horrifying, shocking. It's a tough definition to meet. I'm not going to consider that portion of it." We assume that the trial court would have come to the same conclusion concerning the use of the word "severe" in Tennessee Code Annotated 40-35-102(5). Furthermore, use of the terms as synonymous is supported by the definition of "severe" in Webster's Third New International Dictionary where "serious" is listed as a synonym for "severe." See Webster's Third New International Dictionary 2081 (1993).

While the trial court does not specifically state that the statutory presumption of favorability for receiving an alternative sentence applies to this defendant, the trial court, nevertheless, went on to assume that the statutory presumption did apply to this defendant, "just for the sake of argument." We cannot say the trial court erred in not characterizing the defendant's offenses as "horrifying, shocking," but it would appear to be a close question.

As the trial court noted, the statutory presumption, once applied, must then be rebutted by sufficient evidence to the contrary. The trial court stated it used the following sources in making its determination that the presumption was sufficiently rebutted by the evidence:

> When you look at evidence to the contrary, then first of all, I would look at the presentence report on Mr. Dugger that was submitted to this Court. He's twenty-seven (27) years of age. He's divorced. He told this Court today that -- that the reason he wants back out is to be able to do things with his daughter. That's probably the biggest regret I've got about this case, that we just -- we cheat our children so much. But he's had that opportunity. . . . He's had that opportunity for four years, not four years but since the time he got out of the penitentiary. And he's chosen for whatever reason not to do that. He's chosen to drink, to run the roads and continue the conduct that he's continuing. He says he got drunk at the Nashville Sound and drove, ended up running from the police. "That's all I remember." He -- there's a forgery charge here I'm not concerned about. But the Court finds that since he's got out of -- out of the penitentiary from serving this last sentence, that he's been convicted of a Public Intoxication, he's been convicted of Theft, he's been convicted of Public Intoxication again, he's been convicted of Evading Arrest, the very thing that he's charged with here today. Again he was slapped on the wrist and sent on his way. He was convicted of Simple Assault, at least five (5) convictions since he got out of the penitentiary.[5]

The trial court then addressed the specific evidence to the contrary as set out in Tennessee Code Annotated Section 40-35-103(1)(A)-(C):

> "Sentencing considerations: Confinement is necessary to protect society by restraining the defendant who has a long history of criminal conduct." It started ten (10) years ago and it just won't quit. It's evident by when he got out, he got five (5) new offenses, then he [got] caught [for] this unbelievable series of charges. "Confinement is necessary to avoid depreciating the seriousness of the offense." That's an understatement in Mr. Dugger's case. "Or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses." I apply that section only to those Aggravated Assaults and the Evading Arrest that grew out of this

---

[5]According to his testimony, the defendant was convicted in Knox County for aggravated burglary in 1991 and sentenced to ten years in the penitentiary. He served nine years of that sentence and was released on January 21, 1999. The record does not include any documentation concerning this conviction.

incidence.[6]  "Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant." Confinement is the only way that he operates.  He was put on probation even after serving that nine (9) years on that other sentence. He wouldn't even report, made no efforts to report on any of those cases that he had.

The trial court also considered factors of mitigation and enhancement, as well as the statements of the defendant himself in making its determination.  The trial court was not impressed by the defendant's sudden interest in being involved in the upbringing of his four-year-old daughter. The trial court found no mitigating factors.  As to enhancement factors, the trial court applied each of the following to all four aggravated assault convictions, listed here by statutory number:

(1)    The defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range;

(2)    The defendant was a leader in the commission of an offense involving two (2) or more criminal actors;

(3)    The offense involved more than one (1) victim;

(8)    The defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community; and

(10)   The defendant had no hesitation about committing a crime when the risk to human life was high.

Tenn. Code Ann. § 40-35-114.

The defendant challenges the application by the trial court of factor (2), asserting that the trial court relied on the fact that the defendant was the driver in the aggravated assault charges against Sergeant Harris and Officer Kneaskern, both of the Johnson City Police Department.  The defendant asserts that there was no evidence that he was the leader in the aggravated assaults in the parking lot at Nashville Sound against the security guards, James Jones and Eddie Holmes.  We disagree. Evidence showed that the aggravated assault against James Jones involved the defendant's hitting

_____

[6]As to deterrence, the trial court stated the following: "[T]he Court finds that Sgt. Harris put enough in the record to show that there's in fact a need for general deterrence, and it was provided by Sgt. Harris when he tells us that it becomes a recurring problem [evading arrest]."  Applying the dictates of State v. Hooper, 29 S.W.3d 1, 5-12 (Tenn. 2000), we conclude that the testimony of Sergeant Harris was insufficient to establish the need for deterrence.  Aside from this, however, we conclude that Tennessee Code Annotated Section 40-35-103 was properly applied.

Jones with his car. The aggravated assault against Eddie Holmes involved the defendant's stabbing him with a knife.

The defendant also challenges the application of factors (3) and (10). As to factor (3), the defendant asserts that it was erroneously applied because there are separate convictions for each victim. We agree. This court has determined that enhancement factor (3) does not apply when there are separate convictions for each victim, as was the case here. See State v. Freeman, 943 S.W.2d 25, 31 (Tenn. Crim. App. 1996); State v. McKnight, 900 S.W.2d 36, 54 (Tenn. Crim. App. 1994). Therefore, this enhancement factor was not applicable.

As to factor (10), that the defendant "had no hesitation about committing a crime when the risk to human life was high," the defendant asserts that this factor should not have applied to the felony evading arrest charges because the factor is inherent in the offense. The defendant relies on State v. Belser, 945 S.W.2d 776 (Tenn. Crim. App. 1996), in support of his contention. His reliance is misplaced. In Belser, this court determined that where a defendant was convicted of second degree murder, factor (10) could not be used as an enhancement factor because the risk to human life is inherent in second degree murder. See id. at 792. On the other hand, the factor was appropriately used "in a homicide case where the defendant's conduct posed a threat to a large number of people before the particular victims were killed." Id. (citing State v. Lambert, 741 S.W.2d 127, 134 (Tenn. Crim. App. 1987)). It is a crime under the statue criminalizing felony evading arrest for "any person, while operating a motor vehicle on any street, road, alley or highway in this state, to intentionally flee or attempt to elude any law enforcement officer, after having received any signal from such officer to bring the vehicle to a stop." Tenn. Code Ann. § 39-16-603(b). In this case, the defendant "demonstrated a culpability distinct from and appreciably greater than that incident to the offense for which he was convicted." State v. Jones, 883 S.W.2d 597, 603 (Tenn. 1994). Here, the defendant, while so intoxicated that he failed to remember the events of the night, drove at high speeds, at least partly on a winding, two-lane road; crossed a dangerous intersection after having deliberately turned off his headlights in an effort to elude police; and generally treated the roads like his personal race track. The danger to other drivers and to pedestrians was high. This factor was appropriately applied.

The defendant was released from prison on January 21, 1999, and committed all but one of the offenses, which are the subject of this appeal, on March 12, 1999. Up until April 28, 2000, the date of the hearing on his unsuccessful request for probation, he was convicted of a number of offenses which are in addition to those in this appeal: (1) public intoxication, Johnson City Municipal Court, June 9, 1999 (offense date June 8, 1999); (2) theft up to $500, Washington County General Sessions Court, May 24, 1999 (offense date May 15, 1999); (3) public intoxication, Carter County General Sessions Court, May 25, 1999 (offense date April 22, 1999); (4) evading arrest, Carter County General Sessions Court, May 29, 1999 (offense date April 22, 1999); and (5) simple assault, Washington County General Sessions Court, April 13, 1999 (offense date March 5, 1999).

After the March 12 events, the defendant also forged a check for $150, a crime to which he pled guilty.[7] The defendant also added a charge for failure to appear in Washington County. "There ain't much I can say but I just never showed up[,]" was the defendant's response to questioning on this charge.

The record is replete with examples of the defendant's utter failure at compliance with any measures less restrictive than confinement. The defendant was placed on unsupervised probation after serving ten days in jail for the simple assault conviction;[8] probation for the May 29 evading arrest conviction; probation for the May 25 public intoxication conviction; and supervised probation until restitution was paid for the May 24 theft conviction.[9] On cross-examination, the defendant was asked, "Mr. Dugger, did you ever at any time when you were on probation ever see a probation officer?" The defendant answered, "No, sir."

The defendant, in his own behalf, stated that "[n]obody's give me a chance." The following exchange occurred:

> THE COURT: Well, you haven't given yourself a lot to give somebody something to work with. You know that. You haven't given us anything to work with except a clear disregard for everything that's any authority to you whatsoever. That's the problem. I would hope . . .
>
> MR. DUGGER: How do you expect a man to get out of the penitentiary and not have nothing, Your Honor? They cut you out the door with a seventy-five dollar check and you ain't even got a place to lay your head down . . .

Yet, the defendant stated that he had fourteen years experience as a tattoo artist and could make as much as $1,000 a week in this business. The defendant also stated that he could live with his family if allowed probation. The family he listed included a mother, stepfather, and grandmother all living in Jonesborough, Tennessee. We are not persuaded that the defendant's circumstances as a recently released prisoner gave him no alternative but to burglarize vehicles; steal equipment; stab and run over security guards; get roaring drunk; and lead the police on a potentially deadly chase through the streets and highways of Washington and Carter Counties. We conclude that the evidence supports the trial court's denial of full probation.

## Issue II. Community Corrections

---

[7] In the presentence report, the defendant claimed that he was paid for work trimming trees with the forged check.

[8] This charge was brought by the defendant's former wife, according to the defendant.

[9] The defendant testified that he never paid any restitution.

The defendant also contends that the trial court, even if not granting probation, should have placed him in the community corrections program. The State counters that the defendant is not eligible for community corrections because he does not meet four of the six requirements of Tennessee Code Annotated Section 40-36-106(a).

Offenders may be considered for placement in the community corrections program according to the Tennessee Community Corrections Act of 1985:

> (a) An offender who meets all of the following minimum criteria shall be considered eligible for punishment in the community under the provisions of this chapter:
>
> (1) Persons who, without this option, would be incarcerated in a correctional institution;
>
> (2) Persons who are convicted of property-related, or drug/alcohol-related felony offenses or other felony offenses not involving crimes against the person as provided in title 39, chapter 13, parts 1-5;
>
> (3) Persons who are convicted of nonviolent felony offenses;
>
> (4) Persons who are convicted of felony offenses in which the use or possession of a weapon was not involved;
>
> (5) Persons who do not demonstrate a present or past pattern of behavior indicating violence;
>
> (6) Persons who do not demonstrate a pattern of committing violent offenses; and
>
> Persons who are sentenced to incarceration or on escape at the time of consideration will not be eligible.

Tenn. Code Ann. § 40-36-106(a) (Supp. 1999). In addition, there is a category considered a "special needs" category of eligibility for the community corrections program. This category applies as follows:

> Felony offenders not otherwise eligible under subsection (a), and who would be usually considered unfit for probation due to histories of chronic alcohol, drug abuse, or mental health problems, but whose special needs are treatable and could be served best in the community

rather than in a correctional institution, may be considered eligible for punishment in the community under the provisions of this chapter.

Id. § 40-36-106(c). To be eligible for community corrections pursuant to subsection (c), a defendant must first be eligible for probation pursuant to Tennessee Code Annotated Section 40-35-303. See State v. Staten, 787 S.W.2d 934, 936 (Tenn. Crim. App. 1989). Even where a defendant meets the eligibility requirements of the statute, the defendant is not automatically entitled to participate. See State v. Grandberry, 803 S.W.2d 706, 707 (Tenn. Crim. App. 1990). Statutory language specifically provides that the qualifying criteria "shall be interpreted as minimum state standards, guiding the determination of eligibility of offenders under this chapter." Tenn. Code Ann. § 40-36-106(d).

The record here indicates that the defendant was convicted of four aggravated assaults, which are crimes against the person as provided in title 39, chapter 13, part 1, therefore he fails to meet criterion (2). Aggravated assaults are violent crimes, therefore he fails to meet criterion (3). Here, the defendant used a knife in the commission of one aggravated assault and an automobile as a weapon in the remaining three convictions for aggravated assault, therefore he fails to meet criterion (4). The defendant's past and present behavior patterns demonstrate a pattern of violence, including an assault on his former wife, therefore he fails to meet criterion (5). According to the statute, to participate in a community-based alternative to incarceration, the defendant must meet each of the six criteria. Failure to meet even one criterion would exclude a defendant from consideration under subsection (a). Here, the defendant failed to meet criteria (2), (3), (4), and (5).

As to the special needs category of eligibility, the defendant admitted to using marijuana from the age of nine. He explained in the presentence report that he did not use any drugs during the nine years he was in prison. According to the presentence report, the defendant also used heroin, morphine, cocaine, LSD, and PCP "for years." He also testified in response to being asked if he had a drinking problem:

> I have in the past. Well, I mean, I don't guess you'd call it an alcohol problem. I just went to a bar and got drunk. I never had a problem with it prior to me going to prison. It was just after I got out of prison, going to a bar with friends, you know, people I thought, you know, that I was running around with.

The defendant has apparently not participated in any formal substance abuse program. Even if the record supported a "special need" because of chronic alcohol and drug abuse, probation was not denied by the trial court because of the defendant's problems with drugs and alcohol. Probation was appropriately denied because the defendant has demonstrated a clear disregard for the law and a total inability to abide by measures less restrictive than confinement. The trial court stated, "If I'd let him out today, he'd commit a crime tomorrow." We conclude that any measure less restrictive than confinement would be unsuccessful and that the trial court appropriately denied a community-based alternative to incarceration.

## **CONCLUSION**

Based on the record as a whole, we conclude that the defendant is not a favorable candidate for probation or a community-based alternative to confinement and that incarceration is warranted in this case. The judgment of the trial court is affirmed.

_____
ALAN E. GLENN, JUDGE