IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs January 8, 2002

**STATE OF TENNESSEE v. PAUL FLANNIGAN**

**Direct Appeal from the Criminal Court for Shelby County**
**Nos. 99-04120; 99-04121; 99-04122; 99-04123; 99-04124; 99-04125; and 99-04126**
**Arthur T. Bennett, Judge**

---

**No. W2001-00907-CCA-R3-CD  - Filed February 15, 2002**

---

The defendant, Paul Flannigan, was convicted by a Shelby County jury of one count of attempted first degree murder, two counts of especially aggravated robbery, three counts of aggravated rape, and one count of aggravated burglary. He received an effective sentence of 125 years. He appeals, raising two points: (1) there was insufficient proof to support his convictions, and (2) his sentences are excessive. We reverse one conviction for aggravated rape and remand that charge for a new trial; we modify some of the judgments for an effective sentence of 93 years; we affirm in all other respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed in Part;**
**Reversed in Part; Remanded**

JOE G. RILEY, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ALAN E. GLENN, JJ., joined.

A.C. Wharton, Jr., Public Defender; and Trent Hall (at trial) and W. Mark Ward (on appeal), Assistant Public Defenders, for the appellant, Paul Flannigan.

Paul G. Summers, Attorney General and Reporter;  Thomas E. Williams, III, Assistant Attorney General; William L. Gibbons, District Attorney General; and Karen Cook and Alonda Dwyer, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

On the afternoon of December 23, 1998, victims Herman Burns and Kenya Thigpen were alone in their apartment when the defendant Flannigan, a stranger to the victims, knocked on their

door and identified himself as "Brian."[1] Believing the defendant was a neighbor, the victims allowed the defendant to enter the apartment. Burns testified the defendant immediately propositioned Thigpen to have sexual relations. Thigpen instructed the defendant to leave, and Burns walked the defendant out the door.

Burns testified the defendant immediately began kicking the door and demanded entry to the apartment, stating he needed to use the telephone. Thigpen testified she went to the door to hand him the phone, and he re-entered the apartment. The defendant drew a gun, instructed the victims to remove their clothes, and demanded money. The victims testified the defendant took money from the top of the television and Thigpen's purse. Burns testified he kept $300 in cash in a clothes basket, and the money was missing after the incident. Thigpen testified the defendant took about $25 from the top of the television and her purse.

Thigpen testified the defendant turned the television to a pornographic channel. The defendant ordered Thigpen to perform fellatio upon Burns. Thigpen testified that she complied with his instruction, and the defendant inserted the handle of the gun and another object into her anus before attempting to have sexual intercourse with her. Burns testified that the other object was "like a rattail comb." Burns further testified that when he complained he needed to use the restroom, the defendant forced him to urinate in Thigpen's mouth.

Brian Hollis, who was visiting with the victims' neighbor, knocked on the door to check on Thigpen. According to the victims, the defendant forced them at gunpoint to walk to the door. The defendant told Thigpen both she and Burns would die if she did not tell Hollis they were busy. At the defendant's command, Thigpen advised Hollis through the closed door that she was alright; Hollis left. The defendant then instructed the victims to have sexual intercourse. However, the victims only pretended to engage in sex.

The defendant briefly left the room, and the victims quickly discussed plans to escape. Burns testified the defendant returned nude and holding a bottle of wine. Burns stated the defendant chastised the victims for talking and told them he would kill them if they spoke. The defendant poured the wine onto Thigpen's face and instructed her not to move, but to continue having sex with Burns. Burns said the defendant realized Burns was not penetrating Thigpen and ordered him to perform cunnilingus on her. Thigpen testified the defendant struck Burns in the head upon discovering the victims were not actually having sex.

Burns testified the defendant again told him to have sexual intercourse with Thigpen and Burns again feigned the sex act. According to Burns, the defendant exclaimed, "Man, you're going to f–k around and make me kill you," when he discovered the victims' continued deception. The defendant then thrust a knife into the back of Burns's neck and twisted it. Thigpen testified the defendant repeated his order for Burns to have sex with her, but Burns still did not penetrate her. Angered by Burns's failure to actually engage in intercourse, the defendant slit Burns's throat with

---

[1] The victims testified they resided together as platonic friends and were not romantically involved.

the knife. The defendant then went into the kitchen. Burns testified Thigpen begged him not to die, and the defendant told Thigpen to shut up or he would kill her next.

Then Burns, who testified that he was "nearly unconscious" after the defendant slit his throat, grabbed Thigpen; then, the nude victims charged through a closed sliding glass door that led from their second floor apartment onto a balcony. Burns leapt from the balcony, striking his knee upon a railing before landing upon concrete. As a result of the fall, a nail or similar object pierced his knee. Despite his injuries, Burns got across the parking lot to other apartments to seek help.

Thigpen descended the stairs leading from the balcony to the apartments below, where she found her neighbor, Louis Tate, and Brian Hollis.

Louis Tate testified he lived downstairs in the victims' apartment building. He stated he was only casually acquainted with victim Kenya Thigpen. Tate testified the defendant, whom he had known for two and a half years, visited in his apartment on the afternoon of the offenses. The defendant left at Tate's request so Tate and Brian Hollis could leave the apartment. Approximately 25 minutes later, as Tate and Hollis prepared to leave, they found the defendant was still at the apartment building. Tate questioned why the defendant remained, and the defendant replied he was going upstairs to "holler at" Thigpen. When Tate indicated he did not believe the defendant, the defendant said Thigpen told him to come upstairs and "holler at" her. Tate testified he then heard the defendant knock on the victims' door and identify himself as "Brian." Tate stated he also heard Thigpen refuse the defendant entry into the apartment and his request to use the telephone.

Tate testified the defendant's actions aroused their suspicion, so Hollis knocked on the victims' door. After Hollis returned, Tate and Hollis decided to remain at Tate's apartment. Tate said about 30 minutes later they heard a loud noise and ran outside to find Thigpen naked, covered in blood, and running down the steps. Tate testified Thigpen yelled, "He's raping me."

The victims and Louis Tate testified they observed the defendant calmly walk down the stairs, straightening his clothes. Tate stated he asked the defendant, "What have you done?" Burns said the defendant ignored Tate. Thigpen and Tate stated the defendant walked to his car and left.

Burns testified he underwent surgery for the injuries to his throat and leg and was hospitalized for three days. He stated the injuries to his throat required approximately 50 stitches and those to his knee required approximately 15 stitches. Burns showed the jury the scar which runs from the center of his throat to the back of his neck. He said he also received numerous other cuts and bruises when he broke through the sliding glass door. Kenya Thigpen testified she required 250 stitches for cuts to her lower leg, breasts, and back which she received during the escape.

Officers Dwayne Johnson and Enis Jackson testified the defendant fled when officers came to his home to arrest him.

The defense offered no proof at trial.

The defendant was convicted of the attempted first degree murder of Herman Burns, two counts of especially aggravated robbery, one count of aggravated rape by the defendant's forcible sexual intercourse with Kenya Thigpen, one count of aggravated rape by forcing Burns to engage in fellatio with Thigpen, one count of aggravated rape by forcing Thigpen to engage in fellatio with Burns, and one count of aggravated burglary.

## SUFFICIENCY OF THE EVIDENCE

The defendant makes a two-prong argument relating to the sufficiency of the evidence. First, he argues there is insufficient proof to establish his identity as the perpetrator. Second, he argues one count of aggravated rape must be dismissed because there is insufficient proof he penetrated Kenya Thigpen's vagina.

When an accused challenges the sufficiency of the evidence, this court must review the record to determine if the evidence adduced during the trial was sufficient "to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). This court is required to afford the state the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. State v. Tuttle, 914 S.W.2d 926, 932 (Tenn. Crim. App. 1995). The trier of fact, not this court, resolves questions concerning the credibility of the witnesses, the weight and value to be given the evidence as well as all factual issues raised by the evidence. *Id*.

Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

### A. Identity of the Defendant as the Perpetrator

Louis Tate testified he had known the defendant for two and a half years at the time of the offense. Tate observed the defendant walk up the stairs to the victims' apartment, overheard him request entry, and spoke to the defendant as he was walking down the steps immediately following the victims' dramatic exit from the apartment. Herman Burns testified the ordeal lasted approximately one hour, it occurred in "broad daylight," and the apartment had sufficient lighting. He stated he viewed the defendant's face many times during the offenses and would "never forget what he looked like." While still in the hospital, Burns and Thigpen identified the defendant as the perpetrator in separate photo lineups. They also identified the defendant at trial. We conclude this evidence was more than sufficient to support the jury's finding that the defendant committed the offenses.

### B. Proof of Vaginal Penetration

The defendant was convicted of aggravated rape in Count 1 of Indictment 99-04123, which alleged the defendant did "unlawfully, intentionally, and forcibly while armed with a weapon, to wit: a firearm, engage in sexual intercourse with Kenya Thigpen." *See* Tenn. Code Ann. § 39-13-502(a)(1). Count 2 of this indictment alleged aggravated rape by "anal intercourse with Kenya Thigpen." The trial court instructed the jury it could not convict on both counts. The jury's verdict of guilty was expressly based on Count 1, "sexual intercourse," and not Count 2, "anal intercourse."[2]

Sexual penetration is a necessary element of the offense of aggravated rape. *See* Tenn. Code Ann. § 39-13-502(a). Sexual penetration is defined as "sexual intercourse, ... anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's ... body, but the emission of semen is not required." Tenn. Code Ann. § 39-13-501(7).

Kenya Thigpen testified the defendant inserted the gun and another object into her anus. Although this evidence clearly supported Count 2 charging "anal intercourse," it does not support Count 1 charging "sexual intercourse." Thigpen also said the defendant "attempted to have intercourse with me ...[and was] trying to put his penis inside of me." However, she "couldn't tell" if the defendant had actually inserted his penis. Burns testified the defendant tried "to force himself" on Thigpen and used lotion as a lubricant when he "obviously couldn't penetrate or maneuver the way he wanted." Though only a slight intrusion into a victim's vagina is required to constitute the sexual intercourse aspect of sexual penetration, there must be proof of some intrusion. Therefore, we are forced to conclude there was insufficient proof to support the defendant's conviction upon Count 1 of the indictment charging aggravated rape by sexual intercourse. We remand this count to the trial court for a new trial upon any lesser-included offenses of aggravated rape applicable under the facts. The trial court charged the jury as to several lesser-included offenses, but did not include attempted aggravated rape. For instructional purposes, we would recommend to the trial court that on remand the jury also be charged with attempted aggravated rape if the proof is the same as that contained in the record for this appeal.

## LENGTH OF SENTENCES

---

[2] The trial court's instructions to the jury indicated the jury would consider Count 2 only if it found the defendant not guilty of Count 1. There is no indication in the record that the state objected to the charge. Although the record is somewhat unclear, it appears the jury initially returned verdicts of guilty on both counts. The trial court then instructed the jury that the defendant could not be convicted of both counts. Again, there was no objection by the state. The jury resumed deliberations and returned a guilty verdict only on Count 1. At the sentencing hearing the state asked the trial court to "reinstate" the guilty verdict on Count 2. The trial court acknowledged it was mistaken by not taking the verdict on both counts, but declined to reinstate the verdict on Count 2, noting "I think justice will be done, anyway, with the amount of cases that he's got." The state has not appealed this ruling and concedes on appeal it may not proceed further with Count 2. Since the propriety of the handling of Count 2 is not before us, we voice no opinion on the issue.

The state stipulated the defendant was a Range I standard offender. The trial court sentenced the defendant to the maximum 25 years for each of his convictions except the aggravated burglary conviction, for which the defendant received the maximum six-year sentence.

The defendant argues the trial court erred in applying certain enhancement factors to his sentences. The trial court found the following enhancement factors applied to all of the defendant's convictions: factor 3 (the offense involved more than one victim), factor 5 (the defendant treated or allowed a victim to be treated with exceptional cruelty during the commission of the offense), factor 6 (the personal injuries inflicted upon the victim were particularly great), factor 7 (the offense involved a victim and was committed to gratify the defendant's desire for pleasure or excitement), factor 9 (the defendant possessed or employed a firearm during the commission of the offense), and factor 16 (the crime was committed under circumstances under which the potential for bodily injury to a victim was great). Tenn. Code Ann. § 40-35-114. The trial court also found in mitigation the defendant had no prior criminal record. *See* Tenn. Code Ann. § 40-35-113(13).

This court's review of the sentence imposed by the trial court is *de novo* with a presumption of correctness. Tenn. Code Ann. § 40-35-401(d). However, this presumption is conditioned upon an affirmative showing in the record that the trial judge considered the sentencing principles and all relevant facts and circumstances. State v. Pettus, 986 S.W.2d 540, 543 (Tenn. 1999). If the trial court fails to comply with the statutory directives, there is no presumption of correctness and our review is *de novo*. State v. Poole, 945 S.W.2d 93, 96 (Tenn. 1997).

Attempted first degree murder, aggravated rape, and especially aggravated robbery are Class A felonies with a sentencing range of 15 to 25 years for standard offenders. *See* Tenn. Code Ann. § 40-35-112(a)(1). Aggravated burglary is a Class C felony with a sentencing range of three to six years. *See* Tenn. Code Ann. § 40-35-112(a)(3).

If no mitigating or enhancement factors for sentencing are present, Tenn. Code Ann. § 40-35-210(c) provides that the presumptive sentence for the Class A felonies of attempted first degree murder, aggravated rape, and especially aggravated robbery shall be the midpoint of the applicable range, which is 20 years. The presumptive sentence for the Class C felony of aggravated burglary is the minimum sentence of three years. *See* Tenn. Code Ann. § 40-35-210(c). However, if such factors do exist, a trial court should enhance the presumptive sentence within the range for enhancement factors and then reduce the sentence within the range for the mitigating factors. Tenn. Code Ann. § 40-35-210(e); State v. Arnett, 49 S.W.3d 250, 257 (Tenn. 2001). No particular weight for each factor is prescribed by the statute, as the weight given to each factor is left to the discretion of the trial court as long as the trial court complies with the purposes and principles of the sentencing act and its findings are supported by the record. State v. Moss, 727 S.W.2d 229, 238 (Tenn. 1986); State v. Kelley, 34 S.W.3d 471, 479 (Tenn. Crim. App. 2000); *see* Tenn. Code Ann. § 40-35-210 Sentencing Commission Comments.

The trial court misapplied one or more enhancement factors for each sentence. Accordingly, our review must be *de novo* without any presumption of correctness. *See* Poole, 945 S.W.2d at 96.

## A. Attempted First Degree Murder

The defendant maintains the trial court erred in applying enhancement factor 3 (the offense involved more than one victim), factor 7 (the offense involved a victim and was committed to gratify the defendant's desire for pleasure or excitement), and factor 16 (the crime was committed under circumstances under which the potential for bodily injury to a victim was great) to his conviction for attempted murder. We agree factor 3 was not applicable to this conviction because the defendant attempted to murder only victim Herman Burns. Also, factor 16 was misapplied because the potential for bodily injury is inherent in the offense of attempted first degree murder. State v. Nix, 922 S.W.2d 894, 903 (Tenn. Crim. App. 1995). However, we find factor 7 is applicable to this conviction because the attempted murder was part of an effort to force the victim to engage in sexual intercourse with Thigpen in order to gratify the defendant's desire for sexual pleasure or excitement.

## B. Aggravated Rapes

The defendant argues factor 3 (the offense involved more than one victim) is not applicable to the aggravated rape convictions because there were separate convictions for each victim. The defendant is correct. *See* State v. Freeman, 943 S.W.2d 25, 31 (Tenn. Crim. App. 1996). He also argues factor 6 (the personal injuries inflicted upon the victim were particularly great) is not applicable to the aggravated rape convictions because there was no proof the victims sustained permanent injuries. We do not agree. Both victims sustained severe lacerations, which required numerous stitches, after breaking through the glass patio door in order to escape from the defendant. Further, Herman Burns underwent surgery for the injury to his knee, which occurred as he leapt to the ground; Burns bears a prominent scar around his throat. The injuries to the victims are above and beyond those that would be received as a result of the offense itself and justified the application of enhancement factor 6 to the defendant's convictions for aggravated rape.

The defendant submits factor 9 (the defendant possessed or employed a firearm during the commission of the offense) and factor 16 (the crime was committed under circumstances under which the potential for bodily injury to a victim was great) cannot be applied to the aggravated rape convictions. We agree. The use of a weapon is an element of the offense of aggravated rape and was misapplied. Furthermore, the use of a deadly weapon necessarily creates great potential for bodily injury. *See* Nix, 922 S.W.2d at 903. Factor 16 may not be applied to aggravated rape absent extraordinary circumstances. State v. Smith, 891 S.W.2d 922, 930 (Tenn. Crim. App. 1994).

## C. Especially Aggravated Robbery

The defendant also argues factor 6 (the personal injuries inflicted upon the victim were particularly great), factor 9 (the defendant possessed or employed a firearm during the commission of the offense), and factor 16 (the crime was committed under circumstances under which the potential for bodily injury to a victim was great) are elements of especially aggravated robbery and should not have been applied to his two convictions for that offense. We agree these factors were misapplied to the defendant's especially aggravated robbery convictions. We further agree with the

defendant that factor 3 (the offense involved more than one victim) was misapplied because there were separate convictions for each victim. Further, we conclude factor 7 (the offense involved a victim and was committed to gratify the defendant's desire for pleasure or excitement) was misapplied to the especially aggravated robbery convictions under the facts of the instant case.

## D. Aggravated Burglary

The trial court properly applied enhancement factors 3, 5, 6, 9, and 16 to the aggravated burglary conviction. It is a close question as to whether factor 7 (the offense involved a victim and was committed to gratify the defendant's desire for pleasure or excitement) was properly applied to the aggravated burglary. In view of the other applicable enhancement factors, we believe the maximum sentence of six years is appropriate regardless of the applicability of factor 7.

## E. Summary

In summary, we reach the following conclusions as to which enhancement factors apply or were misapplied to the convictions:

| Offense | Applicable Factors | Misapplied Factors |
|---|---|---|
| Attempted First Degree Murder | 5, 6, 7, 9 | 3, 16 |
| Aggravated Rapes | 5, 6, 7 | 3, 9, 16 |
| Especially Aggravated Robberies | 5 | 3, 6, 7, 9, 16 |
| Aggravated Burglary | 3, 5, 6, 9, 16 | 7 |

We review these sentences *de novo* without any presumption of correctness. Based upon our weighing of the proper enhancement factors, giving consideration to the absence of any prior criminal history, and recognizing the presumptive sentence for each offense, we determine the length of each sentence should be as follows:

| | | |
|---|---|---|
| No. 99-04120 | Attempted First Degree Murder | 25 years |
| No. 99-04121 | Especially Aggravated Robbery | 22 years |
| No. 99-04122 | Especially Aggravated Robbery | 22 years |
| No. 99-04123 | Aggravated Rape | Remanded for a new trial |
| No. 99-04124 | Aggravated Rape | 23 years |
| No. 99-04125 | Aggravated Rape | 23 years |
| No. 99-04126 | Aggravated Burglary | 6 years |

## CONSECUTIVE SENTENCING

The trial court ran the sentences for attempted first degree murder, the three aggravated rapes, and one especially aggravated robbery consecutively, and the remaining sentences concurrently. The total effective sentence was, therefore, 125 years.

The defendant contends consecutive sentencing was not supported by appropriate findings by the trial court. A court may order sentences to run consecutively if the court finds by a preponderance of the evidence that "[t]he defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high." Tenn. Code Ann. § 40-25-115(b)(4).

Furthermore, in the event the trial court finds the defendant is a "dangerous offender," it must also determine whether the consecutive sentences (1) are reasonably related to the severity of the offenses committed; (2) serve to protect the public from further criminal conduct by the offender; and (3) are congruent with general principles of sentencing. State v. Wilkerson, 905 S.W.2d 933, 939 (Tenn. 1995).

In the instant case, the trial court found the defendant to be a dangerous offender. It further found that the consecutive sentences reasonably related to the severity of the offenses and were necessary to protect the public from further criminal conduct by the defendant. After a thorough review of the record, we cannot find the trial court erred in ordering consecutive sentences. We have reversed one aggravated rape conviction and reduced some sentences; however, we will order consecutive sentencing in a manner similar to that ordered by the trial court.

Accordingly, the sentences shall be for an effective term of 93 years, as follows:

| Indictment | Offense | Sentence |
|---|---|---|
| 99-04120 | Attempted First Degree Murder | 25 years |
| 99-04121 | Especially Aggravated Robbery | 22 years consecutive to 99-04120 |
| 99-04122 | Especially Aggravated Robbery | 22 years concurrent with 99-04120 |
| 99-04123 | Aggravated Rape | Reversed and remanded for new trial |
| 99-04124 | Aggravated Rape | 23 years consecutive to 99-04120 and 99-04121 |
| 99-04125 | Aggravated Rape | 23 years consecutive to 99-04120, 99-04121, and 99-04124 |
| 99-04126 | Aggravated Burglary | 6 years concurrent with 99-04120 |

TOTAL EFFECTIVE SENTENCE OF 93 YEARS

**CONCLUSION**

Accordingly, we reverse the defendant's conviction for the aggravated rape of Kenya Thigpen in Docket Number 99-04123 and remand it for a new trial on any lesser-included offenses. The remainder of the defendant's convictions are affirmed. Further, we modify the defendant's sentences to the extent set forth in this opinion.

_____
JOE G. RILEY, JUDGE