# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs October 5, 2004

## STATE OF TENNESSEE v. LEMAR J. WHITE

### Appeal from the Criminal Court for Shelby County
### No. 01-11077     Carolyn Wade Blackett, Judge

_____

### No. W2004-00276-CCA-R3-CD  - Filed February 11, 2005

_____

The Appellant, Lemar J. White, was convicted by a Shelby County jury of first degree premeditated murder and sentenced to a term of life imprisonment. On appeal, White raises the single issue of sufficiency of the evidence. Specifically, he challenges the proof with regard to the element of premeditation. After review of the record, we find the evidence sufficient to support the verdict and affirm the judgment of conviction.

### Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed

DAVID G. HAYES, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and JAMES CURWOOD WITT, JR., JJ., joined.

Robert Wilson Jones, Chief Public Defender; Tony N. Brayton, Assistant Public Defender (on appeal); Larry Nance and Dianne Thackery, Assistant Public Defenders (at trial), Memphis, Tennessee, for the Appellant, Lemar J. White.

Paul G. Summers, Attorney General and Reporter; Rachel E. Willis, Assistant Attorney General; William L. Gibbons, District Attorney General; Tom Hoover and Gail Vermaas, Assistant District Attorneys General, for the Appellee, State of Tennessee.

## OPINION

### Factual Background

On March 3, 2001, the victim, Timmy Williams, was gunned down in his front yard after returning to his North Memphis residence with several friends. Following a barrage of approximately fifteen to twenty gunshots, Williams was struck by a bullet in the neck, which severed his carotid artery and jugular vein, producing death. Several of the gunshots struck the car Williams had just left, and others ricocheted off the front of Williams' house. While no one saw the shooter, Williams' friends told police that the shots were fired from an area behind a fence, which was across

the street from Williams' house. Upon inspection of the fenced area, police found a green plastic chair near an opening in the fence, which permitted a clear view of the victim's house. Additionally, twelve shell casings were found on the ground around the chair. Fingerprint experts with the Memphis Police Department recovered five latent fingerprints from the green chair which matched those of the Appellant. The police learned that the Appellant was currently residing with his mother. The Appellant's mother gave written consent to a search of her house, which resulted in the seizure of a SKS 7.62 rifle hidden in the crawlspace underneath the porch. Ballistics testing revealed that the twelve spent shell casings found at the scene had been fired from the rifle recovered from the Appellant's residence.

The Appellant was arrested and subsequently interviewed by police. He initially denied any knowledge of the murder but, when confronted with the evidence against him, gave a written statement admitting that he had shot Williams. He stated that he had gone to the area, taken a lawn chair from a porch, and waited in a backyard across the street from Williams' home. He further stated that he did not know Williams but that a man named Chris had agreed to pay him $6,000.00 to shoot the victim. After seeing a man matching the description given by Chris, the Appellant began firing. Afterwards, he drove to a Wal-Mart parking lot and abandoned the car, returning to his home by bus. He also admitted hiding the weapon in the crawlspace under his home.

On September 20, 2001, a Shelby County grand jury returned a two-count indictment against the Appellant, charging alternative theories of first degree premeditated murder and first degree felony murder. The Appellant's jury trial began November 17, 2003, after which he was convicted of first degree premeditated murder. Following the penalty phase, he was sentenced to life in prison. The Appellant's motion for new trial was overruled on January 12, 2004, with this appeal following.

**Analysis**

On appeal, the Appellant raises the single issue of sufficiency of the evidence. Specifically, he challenges the evidence with regard to the element of premeditation.

When an appellant challenges the sufficiency of the evidence, this court must determine "whether, after viewing the evidence in the light most favorable to the [State], *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *see also* Tenn. R. App. P. 13(e); *State v. Duncan*, 698 S.W.2d 63, 67 (Tenn. 1985). The State is entitled to the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978).

The credibility of witnesses, the weight of their testimony, and the reconciliation of conflicts in the evidence are matters entrusted exclusively to the trier of fact. *State v. Gentry*, 881 S.W.2d 1, 3 (Tenn. Crim. App. 1993) (citing *Byrge v. State*, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). A jury verdict for the State accredits the testimony of the State's witnesses and resolves all conflicts in favor of the State. *State v. Williams*, 657 S.W.2d 405, 410 (Tenn. 1983). Moreover, guilty

verdicts remove the presumption of innocence enjoyed by defendants at trial and replace it with a presumption of guilt. *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). Thus, an appellant challenging the sufficiency of the evidence carries the burden of illustrating to this court why the evidence is insufficient to support the verdict. *State v. Freeman*, 943 S.W.2d 25, 29 (Tenn. Crim. App. 1996).

The Appellant was convicted of first degree murder, which is defined in pertinent part by Tennessee Code Annotated section 39-13-202(a)(1) (2003) as "[a] premeditated and intentional killing of another." Tennessee Code Annotated section 39-13-202(d) provides:

> As used in subdivision (a)(1) "premeditation" is an act done after the exercise of reflection and judgment. "Premeditation" means that the intent to kill must have been formed prior to the act itself. It is not necessary that the purpose to kill pre-exist in the mind of the accused for any definite period of time. The mental state of the accused at the time the accused allegedly decided to kill must be carefully considered in order to determine whether the accused was sufficiently free from excitement and passion to be capable of premeditation.

Tenn. Code Ann. § 39-13-202(d). Therefore, in order to convict the Appellant of the indicted offense, the State was required to prove beyond a reasonable doubt that he killed Williams with "premeditation." Whether premeditation is present is a question of fact for the jury, and it may be inferred from the circumstances surrounding the commission of the crime. *State v. Berry*, 141 S.W.3d 549, 565-66 (Tenn. 2004); *State v. Suttles*, 30 S.W.3d 252, 261 (Tenn. 2000); *State v. Pike*, 978 S.W.2d 904, 914 (Tenn. 1998).

The Appellant does not contest the fact that he was the person who shot and killed the victim. Moreover, he acknowledges that his motive for the shooting was the promise that he would be paid $6,000.00. We find it difficult to perceive of any murder-for-hire or contract killing which does not necessarily involve the act of premeditation, *i.e.*, that the killing occurred after the exercise of reflection and judgment. Furthermore, proof at trial established that the Appellant's intent to kill was formed prior to the act itself. The Appellant, armed with a high caliber rifle, prepared for the homicide by positioning himself behind a fence and lying in wait for thirty-five to forty minutes until presented with the opportunity to kill the unarmed victim. The Appellant continued to fire as the victim fled for his life. Following the homicide, the Appellant's actions reflected a certain degree of calmness. The Appellant's planning activities, the nature of the killing, secretion of the weapon, and calmness after the murder support the existence of premeditation. *See Berry*, 141 S.W.3d at 566; *Pike*, 978 S.W.2d at 914-15; *State v. Bland*, 958 S.W.2d 651, 660 (Tenn. 1997). After review of the evidence, we conclude that a rational trier of fact could have found the essential elements of the crime of first degree murder beyond a reasonable doubt. Tenn. R. App. P. 13(e).

## CONCLUSION

Based upon the foregoing, we find the evidence legally sufficient to support the Appellant's conviction for first degree murder.  Accordingly, the judgment of conviction is affirmed.

      _____

DAVID G. HAYES, JUDGE