IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 14, 2024

**STATE OF TENNESSEE v. GUSTAVIO ROUSSEAU**

**Appeal from the Circuit Court for Montgomery County**
**No. CC-22-CR-6      William R. Goodman, III, Judge**

———————————————

**No. M2023-01320-CCA-R3-CD**

———————————————

The Circuit Court for Montgomery County sentenced the Defendant, Gustavio Rousseau, as a Range I offender to twenty-four years at thirty percent in the Tennessee Department of Correction following his guilty-pleaded conviction for attempted first degree murder. On appeal, the Defendant argues that the trial court abused its discretion by sentencing him to one year less than the maximum sentence in the applicable range. The Defendant specifically argues that the trial court erred in applying the enhancement factor of Tennessee Code Annotated section 40-35-114(2), finding that the Defendant was a leader in the commission of an offense involving two or more criminal actors. The Defendant also argues that the trial court erred in not giving due consideration to sentencing principles since the Defendant had accepted responsibility in entering an open plea and had no prior felonies. The State contends that the Defendant has failed to show that the trial court abused its discretion because the Defendant did not overcome the presumption of reasonableness accorded to the trial court's sentencing decision. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

KYLE A. HIXSON, J., delivered the opinion of the court, in which J. ROSS DYER and TOM GREENHOLTZ, JJ., joined.

John D. Parker, Clarksville, Tennessee, for the appellant, Gustavio Rousseau.

Jonathan Skrmetti, Attorney General and Reporter; Johnny Cerisano, Assistant Attorney General; Robert J. Nash, District Attorney General; and Kayla McBride, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## I.    FACTUAL AND PROCEDURAL HISTORY[1]

Ernest Edington was in the upstairs bedroom of his home when he heard a loud crash on the night of June 24, 2021. Mr. Edington's wife, Pamela Nelson, was in a separate downstairs bedroom, so Mr. Edington sat up in bed and shouted to Ms. Nelson to check on her. By the time Mr. Edington was sitting up in his bed, he saw one of his former employees, the Defendant, standing in his bedroom doorway. The Defendant proceeded to attack Mr. Edington with the handle of a pickax. Mr. Edington kicked his legs at the Defendant in an effort to fend him off, but the Defendant struck Mr. Edington once in the chin and once in the forehead with the handle.

Mr. Edington managed to tackle the Defendant, pushing him onto the landing outside the bedroom. Running back into the bedroom, Mr. Edington closed the door behind him, leaving the Defendant out on the landing. The Defendant proceeded to kick in the bedroom door while Mr. Edington grabbed his 150-year-old, Chinese "King Sword." He stabbed the Defendant once in the chest and once in the arm before pushing the Defendant out the door and slamming it shut again. Mr. Edington then began to unpack his shotgun, which was beside the bedroom door. At that time, the Defendant left the house.

Mr. Edington called 911 while running downstairs to his wife. He could hear Ms. Nelson yelling out for an ambulance, and when he entered her bedroom, he saw blood everywhere. Later, Ms. Nelson would describe how someone else attacked her while the Defendant was upstairs attacking Mr. Edington. When the police and EMTs arrived, Mr. Edington refused medical treatment in order to assist the police with locating the Defendant. Mr. Edington gave information to the police regarding the Defendant's identity and where he lived, since Mr. Edington had known and employed the Defendant.

In January 2022, a Montgomery County grand jury returned an indictment, charging the Defendant and his codefendant, Shaun Swift, with one count of aggravated burglary (count 1); two counts of criminal attempt to commit first degree murder (counts 2 and 3); one count of especially aggravated robbery (count 4); and two counts of aggravated assault

---

[1] The record on appeal does not contain a transcript of the guilty plea hearing and, as a result, the stipulated facts underlying the offenses. "It is the duty of the party seeking review of the action of the trial court to prepare a record sufficient to enable the reviewing court to determine if the discretion has been abused." *State v. Bunch*, 646 S.W.2d 158, 160 (Tenn. 1983); *see also* Tenn. R. App. P. 24. Nevertheless, both victims testified at the sentencing hearing in great detail regarding the attacks perpetrated upon them. We base the following factual summary on these testimonies.

(counts 5 and 6). *See* Tenn. Code Ann. §§ 39-14-403 (aggravated burglary) (redesignated at Tennessee Code Annotated section 39-13-1003 as of July 1, 2021); -12-101, -13-202 (attempted first degree murder); -13-403 (especially aggravated robbery); -13-102 (aggravated assault).

The Defendant later pleaded guilty to attempted first degree murder of Mr. Edington in count 2 and to aggravated robbery of Ms. Nelson as a lesser included offense in count 4. *See id.* § 39-13-402. Counts 1, 3, 5, and 6 were dismissed in settlement. By agreement, the Defendant was sentenced to serve eight years for his aggravated robbery conviction to run consecutively to the sentence imposed for his attempted first degree murder conviction. The parties agreed that the length of service for the attempted first degree murder conviction would be determined by the trial court following a sentencing hearing.

A sentencing hearing for the attempted first degree murder conviction was held on September 13, 2023. The presentence report detailed that the Defendant had no prior felony convictions. The presentence report was admitted as an exhibit at the sentencing hearing along with written victim impact statements from Mr. Edington and Ms. Nelson. The Defendant introduced written letters from his mother and twin brother, along with his own written statement. After the statements were admitted into evidence, the trial court recessed to read the statements before hearing further proof.

Mr. Edington testified following the recess. At the time of the hearing, Mr. Edington was sixty-four years old. Mr. Edington had known the Defendant since the Defendant was a child living in Mr. Edington's neighborhood. The Defendant would trick-or-treat at Mr. Edington's home and would run the trails behind Mr. Edington's house. Around a year before the attacks, Mr. Edington hired the Defendant to paint his house and strip "the popcorn" ceilings. The Defendant spent the winter months working in Mr. Edington's home almost every day of the week. At some point after the winter, the Defendant suddenly stopped working for Mr. Edington and did not return until the night of June 24, 2021.

Mr. Edington stated in his written victim impact statement that "Gustavio and his accomplice had a two pronged coordinated attack where they broke[] in the back door of our house just after midnight and each set out to kill both Pam and I in our beds." Mr. Edington explained that after the attacks, he had trouble sleeping at night. He also suffered from anxiety and trauma. Mr. Edington took gun lessons with Ms. Nelson and slept with a gun near his bed, which he did not do previously. He also said in his written statement that he wanted the Defendant to be imprisoned for an "extremely" long time.

Ms. Nelson then testified. At the time of the hearing, Ms. Nelson was seventy-one years old. Ms. Nelson knew the Defendant as her husband's former employee. She said in her written statement that the Defendant knew all about the layout of the house because the Defendant had painted inside. Also, Ms. Nelson said in her written statement,

> Shaun [Swift] was a stranger to us. Gustavio, on the other hand, befriended his boss, Ernest [Edington]. Gustavio knew our schedules and knew when we would be home. . . .
>
> . . . .
>
> This was a very well thought out calculated attempt on our lives. Since we didn't know Shaun he needed to be educated on our whereabouts, behaviors, and their agreed upon plan ahead of time. Gustavio provided that education.

Ms. Nelson testified that on the night of June 24, 2021, she was in the downstairs bedroom lying in her bed. She was relaxing, watching videos, and playing games on her phone when she heard a loud crash come from the back of the house. Ms. Nelson saw a flash of light as a man came into her bedroom. Ms. Nelson could not tell who the man was since the light was behind the man in the doorway. Ms. Nelson stated in her written statement that she did not know Mr. Swift before the attacks, but she assumed that the man who attacked her was Mr. Swift because he had subsequently pleaded guilty to the charges against him in this case.

Ms. Nelson also testified that Mr. Swift repeatedly bludgeoned her over her head with a blunt object. Ms. Nelson's personal phone had a military-grade cover, so she used it to guard herself from the attack. She counted twelve strikes to her head, though she estimated that it was closer to twenty to thirty strikes.

The man stopped hitting Ms. Nelson momentarily as he stepped out into the hallway, but he reentered the room and resumed striking Ms. Nelson. Afterwards, the man grabbed her personal phone and her work phone that were on her nightstand. Ms. Nelson testified that the man did not even have to search for the phone, but simply picked it up and left. Ms. Nelson asserted that, between the Defendant and Mr. Swift, the Defendant would have been the only one who knew she had two phones.

After the Defendant and Mr. Swift had left the house, Ms. Nelson shouted out for an ambulance as Mr. Edington came down the stairs. As a result of her injuries, Ms. Nelson

was life-flighted to Vanderbilt Hospital. She had three surgeries to stabilize her head injury. She testified that the attacks gave her post-traumatic stress disorder, and for a while afterwards, she could not go near windows in her home without having the shades drawn. She also took gun lessons with Mr. Edington and slept with a gun for two-and-a-half months after the attacks, even though she testified that she hates guns.

As a chemical therapist who helped people suffering from addiction, Ms. Nelson believed the Defendant's behavior far exceeded the behavior of typical drug addicts or alcoholics. She undoubtedly believed that the Defendant and Mr. Swift intended to kill her and her husband on June 24, 2021. Suggesting a sentence longer than thirty years, Ms. Nelson wanted the Defendant to receive an extensive sentence so that she would not have to see him again in her lifetime.

Ms. Nelson clarified on cross-examination that Mr. Swift was the only one who directly attacked her on the night of June 24, 2021. However, Ms. Nelson asserted that only the Defendant would have known where she slept.

The Defendant did not present any witnesses or further proof at the sentencing hearing.

The State argued that pursuant to Tennessee Code Annotated section 40-35-114, the trial court should consider enhancement factors (3)—the offense involved more than one victim; (5)—the defendant treated, or allowed a victim to be treated, with exceptional cruelty; (9)—the defendant possessed or employed a firearm or other deadly weapon during the commission of the offense; and (10)—the defendant had no hesitation about committing a crime when the risk to human life was high. The State further argued that enhancement factor (2) should be considered because the Defendant was a leader in the commission of an offense that involved two or more criminal actors. *See* Tenn. Code Ann. § 40-35-114(2). Specifically, the State argued:

> [B]ut for Mr. Rousseau's knowledge of that home, Shawn [sic] Swift would never have been in there, never would have injured Pamela Nelson. And, frankly, Mr. Rousseau is the only one who knew the layout of that house. He knew where the two victims slept.
>
> Mr. Swift had no connection to that house. His only connection was Mr. Rousseau.

- 5 -

Mr. Rousseau is the leader of this offense, and I believe that enhancement factor [two] applies.

The State concluded by asking for the maximum sentence of twenty-five years' imprisonment.

The Defendant argued that there was no proof to support the application of enhancement factor (2). Further, the Defendant asked the trial court to consider mitigating factor (13) with respect to the fact that the Defendant had accepted responsibility in entering an open plea and the fact that the Defendant had no prior felony convictions. *See* Tenn. Code Ann. § 40-35-113(13) ("Any other factor consistent with the purposes of this chapter."). For those reasons, the Defendant requested the minimum sentence of fifteen years' imprisonment.

At the conclusion of the proof at the hearing, the trial court delivered its sentencing decision relative to the length of the Defendant's attempted first degree murder sentence. It commented that this was the most disturbing case it had heard that did not involve homicide. The trial court found that enhancing factors (3), (5), (9), and (10) applied. The trial court also found that enhancing factor (2) applied, noting the Defendant was a leader in the commission in the offense involving two or more criminal actors because he knew the victims and was familiar with their home. The trial court also found that mitigating factor (13) applied, stating that the Defendant "had no prior criminal record as an adult" and that "there was a[n open plea] entered." It sentenced the Defendant to twenty-four years' imprisonment at thirty percent with the Tennessee Department of Correction, which was to be served consecutively to the eight-year sentence for the Defendant's aggravated robbery conviction. The Defendant now appeals the sentencing decision of the trial court.

## II.  ANALYSIS

The Defendant argues on appeal that the trial court erred in imposing almost the maximum sentence for his attempted first degree murder conviction. Specifically, the Defendant argues that the trial court erred in applying enhancement factor (2). *See* Tenn. Code Ann. § 40-35-114(2). The Defendant also argues generally that the sentence was excessive because it was not the least severe measure necessary under the law and the trial court did not give due consideration to the principles relevant to sentencing. The State contends that the trial court properly considered enhancement factor (2) and that the Defendant has failed to show an abuse of discretion by overcoming the presumption of reasonableness given to the trial court's in-range sentencing decision. For the reasons that follow, we agree with the State.

- 6 -

A.     Standard of Review

When an accused challenges the length of a sentence or manner of service, this court reviews the trial court's sentencing determination under an abuse of discretion standard accompanied by a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012); *see also State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012) (applying the *Bise* standard to "questions related to probation or any other alternative sentence"). The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.; *see also State v. Arnett*, 49 S.W.3d 250, 257 (Tenn. 2001).

This court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 709-10. Moreover, under such circumstances, appellate courts may not disturb the sentence even if we had preferred a different result. *See State v. Carter*, 254 S.W.3d 335, 346 (Tenn. 2008). Those purposes and principles include "the imposition of a sentence justly deserved in relation to the seriousness of the offense," Tennessee Code Annotated section 40-35-102(1), a punishment sufficient "to prevent crime and promote respect for the law," Tennessee Code Annotated section 40-35-102(3), and consideration of a defendant's "potential or lack of potential for . . . rehabilitation," Tennessee Code Annotated section 40-35-103(5). *See also Carter*, 254 S.W.3d at 344. Ultimately, in sentencing a defendant, a trial court should impose a sentence that is "no greater than that deserved for the offense committed" and is "the least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. § 40-35-103(2), (4).

The Sentencing Reform Act was enacted in order "to promote justice" and "assure fair and consistent treatment of all defendants by eliminating unjustified disparity in sentencing and providing a fair sense of predictability of the criminal law and its sanctions." Tenn. Code Ann. § 40-35-102. In determining the proper sentence, the trial court must consider: (1) the evidence adduced at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; (6) any statistical information provided by the Administrative Office of the Courts ("AOC") as to Tennessee sentencing practices for similar offenses; (7) any statement the defendant wishes to make in the defendant's own behalf about sentencing; and (8) the result of the validated

risk and needs assessment conducted by the department and contained in the presentence report. Tenn. Code Ann. § 40-35-210(b).

To facilitate meaningful appellate review, the trial court must state on the record the sentencing principles it considered and the reasons for the sentence imposed. Tenn. Code Ann. § 40-35-210(e)(1)(B); *Bise*, 380 S.W.3d at 705. Mere inadequacy in the articulation of the reasons, however, should not negate the presumption [of reasonableness]." *Bise*, 380 S.W.3d at 705-06. A sentence should be upheld if the trial court provided "enough to satisfy the appellate court that [it] has considered the parties' arguments and [that it] has a reasoned basis for exercising [its] . . . legal decision making." *Id*. (quoting *Rita v. United States*, 551 U.S. 338, 356-57 (2007)).

## B.    Enhancement Factor (2)

The weight to be afforded an enhancement or mitigating factor is left to the trial court's discretion so long as its use complies with the purposes and principles of the 1989 Sentencing Act and the court's findings are adequately supported by the record. Tenn. Code Ann. § 40-35-210(d)-(f); *Carter*, 254 S.W.3d at 342-43. Moreover, misapplication of an enhancement or mitigating factor no longer "invalidate[s] the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." *Bise*, 380 S.W.3d at 706. Accordingly, this court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709-10.

Here, both Mr. Edington and Ms. Nelson testified that the Defendant had worked inside their house prior to the attacks on June 24, 2021. While the Defendant's connection to Mr. Edington as his employee was apparent, Mr. Swift's connection to Mr. Edington, Ms. Nelson, or their home was not. Ms. Nelson testified that she had never seen Mr. Swift and he had never been in the house. Additionally, the couple testified that they were attacked only shortly after hearing the loud crash. Mr. Nelson stated that the attack was coordinated based on how quickly the Defendant and Mr. Swift located the couple. The State aptly observes that to act with such efficiency, both the Defendant and Mr. Swift had to know that the couple slept separately, which was knowledge only the Defendant would have had.

The trial court stated on the record that the Defendant knew the victims and was familiar with their home. Though brief, the trial court stated on the record the reasons for applying enhancement factor (2), indicating that it had "considered the parties' arguments

and ha[d] a reasoned basis for exercising [its] . . . legal decision making." *Bise*, 380 S.W.3d at 705-06. Further, the Sentencing Reform Act "does not require that the defendant be the sole leader but rather that he be 'a leader.'" *State v. Freeman*, 943 S.W.2d 25, 30 (Tenn. Crim. App. Sept. 30, 1996). As such, the record supports the trial court's application of enhancement factor (2).

Moreover, we note that the trial court found enhancing factors (3), (5), (9), and (10) also applied to the Defendant's sentence, and the Defendant does not challenge their application. As stated above, enhancement factors are advisory only, and misapplication of an enhancement factor is not enough, standing alone, to reverse a sentence unless the trial court wholly departed from the 1989 Act, as amended in 2005. *Bise*, 380 S.W.3d at 705-06.

## C.     Excessive Sentence

The Defendant also argues generally that the trial court erred in imposing an excessive sentence. Specifically, the Defendant asserts that the trial court did not give due consideration to the facts that the Defendant had no prior felony convictions and had entered an open plea for the attempted first degree murder conviction.

The presumption that a trial court's decision is reasonable applies to "within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *Bise*, 380 S.W.3d at 707. Here, the Defendant relies only on his assertion that the trial court did not give due consideration to his having no prior felony convictions nor to his entering an open plea. However, the trial court stated on the record that mitigating factor (13) applied because the Defendant "had no prior criminal record as an adult" and that "there was a[n open plea] entered." Mere disagreement with the weight the trial court gives to properly assigned factors is not grounds for appeal. *Bise*, 380 S.W.3d at 706.

In sum, the trial court found that enhancement factors (2), (3), (5), (9), and (10) were applicable, and it found that mitigating factor (13) applied. "[A] trial court's weighing of various mitigating and enhancement factors has been left to the trial court's sound discretion." *Carter*, 254 S.W.3d at 345. Because the trial court's sentence complies with the purposes and principles of sentencing, the Defendant has failed to overcome the presumption of reasonableness afforded to the trial court. Accordingly, we cannot say that the trial court abused its discretion in sentencing the Defendant to a twenty-four-year term of imprisonment, and the Defendant is not entitled to relief.

### III. CONCLUSION

In consideration of the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
KYLE A. HIXSON, JUDGE